**Dolores SCHNEIDER, Appellant,**

v.

**NATIONAL RAILROAD PASSENGER CORP., Appellee.**

**No. 785, Docket 87–7971.**

United States Court of Appeals, Second Circuit.

Argued March 1, 1988.
Decided Aug. 9, 1988.

Charles C. Goetsch, New Haven, Conn. (Cahill, Goetsch & DiPersia, P.C., of counsel), for appellant.

Sally S. King, Hartford, Conn. (Robinson & Cole, of counsel), for appellee.

Before OAKES and NEWMAN, Circuit Judges, and KEENAN, District Judge.[*]

OAKES, Circuit Judge:

This appeal presents us with the question whether employment, for purposes of the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51–60 (1982), ceases the moment an employee leaves her work station at the end of a day's work, even though at the time of her injury she has not left the employer's premises. The United States District Court for the District of Connecticut, Ellen Bree Burns, Judge, in granting summary judgment to the employer, answered the question in the affirmative, relying on the so-called "commuter cases," which involved injuries incurred by employees while commuting to or from the workplace. We do not believe that those cases are applicable to this situation, and therefore reverse.

Dolores Schneider, a ticket agent, brought this personal injury action against the National Railroad Passenger Corp. (hereafter "Amtrak" or "Railroad"), alleging that Amtrak negligently failed to provide her with a safe place to work. At the time of her injuries, Schneider had been assigned to work the 3:30 p.m. to 11:30 p.m. night shift at the Union Railroad Station in Hartford, Connecticut. The Amtrak ticket office is located just inside the north side door of the station vestibule, which juts out from the eastern wall of the building. In January of 1986 there was a sidewalk and an area for parking cars running along the eastern wall of the station building, with parking spaces set at an oblique angle to the sidewalk and building wall. The easternmost edge of the station property is marked by a line of brass buttons embedded in pavement and is part of the roadway known as Union Place. The area of Union Place lying between the line of brass buttons and the eastern wall of the station building, where Amtrak employees frequently parked their cars, is not a city street, and the City does not clear snow from it or otherwise maintain it.

On Sunday, January 26, 1986, according to Schneider's deposition, she arrived for work and parked her car in the area just described, approximately three car widths, or between fifteen and eighteen feet, from the side door nearest the ticket office. When Schneider's replacement arrived about 11:15 p.m. and indicated he was ready to take over, Schneider left her shift early, between 11:20 and 11:25 p.m. As she was entering her car, she was attacked and robbed by an unknown assailant, who then used her car to drive her to another location where he attempted to rape her.

Amtrak leases the station premises from the Greater Hartford Transit District and its lease, dated October 25, 1982, controls the landlord/tenant relationship. The Amtrak lease agreement defined "Public Use Area" as "the exterior sidewalks ... and other areas on the Land and in the Buildings that are made available by Landlord for use by the general public as more particularly described" in an attached plan of the premises, which carefully notes the line of brass buttons set into the surface of Union Place demarking the station premises and the city street line. In connection with the cross-motions for summary judgment filed by the parties, an authenticated survey map of the station was filed, which indicates the eastern boundary line of the station property as running north/south about one-third of the way into the pavement of the Union Place roadway. The survey map is consistent with the exhibit attached to the lease. An authenticated topography survey map dated November 21, 1977, coincides with these documents, in

* Of the United States District Court for the Southern District of New York, sitting by designation.

our mind establishing the boundary of the public use area as including the area where Schneider states she was parked.

The lease agreement grants Amtrak use of and access to the public use areas and requires that Amtrak "shall not at any time use ... or suffer or permit anyone to use ... the Public Use Areas or do or permit anything to be done in ... the Public Use Areas which causes injury to persons...." The lease also requires Amtrak to use the premises so as "to provide for the comfort, safety and convenience of its employees and passengers...."

There is evidence that it was the practice of Amtrak employees, including ticket clerks, to park their cars in one of the spaces by the north side door of the station, and that this was encouraged by the Amtrak lead ticket clerk, who is said to have given each of his subordinates an Amtrak sticker to tape to the windshield of his or her car so that the cars would not be towed from the parking area. It is obvious that the parking spaces by the north side door of the station, where Schneider has testified she was parked, provided the shortest distance to and from the Amtrak ticket office.

Amtrak police officers are assigned to the Union Railroad Station twenty-four hours a day on a three-shift basis, one for each shift. Two Amtrak police officers who worked at Union Station testified in depositions that they had the power of arrest in the area west of the brass buttons where the employees parked, and that their authority extended up to the boundary of the city street. They also stated that they were responsible for anything occurring in the area between the line of brass buttons and the station building.[1] Indeed, the Amtrak police officer on duty during the 4:00 p.m.-to-midnight shift normally is present at the station and is said often to escort Amtrak ticket clerks to their cars or watches to make sure that they get to their cars safely. The police officer assigned to cover the 4:00 p.m.-to-midnight shift on the date of Schneider's attack apparently had been injured two weeks earlier and had been unable to work since his injury. No substitute had been assigned, so that on January 26 Schneider was without the protection she normally would have had. The officer who covered the midnight–to–8:00 a.m. shift had arrived at the station about 11:15 p.m., having walked to work that evening.

In ruling on the cross-motions for summary judgment, Judge Burns correctly noted that if the injuries occurred within the scope of Schneider's employment, the district court should exercise jurisdiction under 45 U.S.C. § 56 (1982). If Amtrak were correct that the injuries occurred outside the course of her employment, the court would lack subject matter jurisdiction and must dismiss the action.

The judge was also correct in saying that "[i]t generally is accepted that an employee traversing the employer's premises to report to or to leave the job within a reasonable time of her shift is fulfilling a function necessarily incident to employment." However, her opinion then primarily focused on cases holding that, as a general proposition, injuries sustained while commuting to and from work are not covered under FELA, *e.g., Getty v. Boston & Maine Corp.*, 505 F.2d 1226, 1227–28 (1st Cir.1974); *Metropolitan Coal Co. v. Johnson*, 265 F.2d 173, 178 (1st Cir.1959); *Quirk v. New York, Chi. & St. L. R.R.*, 189 F.2d 97, 100–01 (7th Cir.), *cert. denied*, 342 U.S. 871, 72 S.Ct. 105, 96 L.Ed. 655 (1951); *Sassaman v. Pennsylvania R.R.*, 144 F.2d 950, 952–53 (3d Cir.1944). Although the court noted that "exception[s]" to this standard exist if the commuting employee is injured while discharging duties necessarily incident to his or her employment (citing *Parker v. Long Island R.R.*, 425 F.2d 1013, 1015 (2d Cir.), *cert. denied*, 400 U.S. 829, 91 S.Ct. 57, 27 L.Ed.2d 58 (1970)), or if the employee is injured on the worksite while on the way to begin or end his or her shift (citing *Erie R.R. v. Winfield*, 244 U.S. 170, 173, 37 S.Ct. 556, 557, 61 L.Ed. 1057 (1917), and *Caillouette v. Baltimore & O. Chi. Term. R.R.*, 705 F.2d 243, 246 (7th Cir.

---

1. However, Amtrak's captain of police, stationed in New Haven and in charge of security from New Haven to Springfield, testified in a deposition that Amtrak officers had jurisdiction only inside the station.

1983)), the court nevertheless held the "exception[s]" inapplicable to this case. In so doing, however, the court assumed that Schneider was injured "while on adjacent premises or off the [Amtrak] premises entirely"—an assumption which Schneider's evidence and testimony belies. The court then went on to find that as a matter of law the plaintiff's conduct did not fall within the scope of her employment, emphasizing that Schneider had finished her shift and was going home when the incident occurred. Judge Burns acknowledged that several factual questions—most notably whether Schneider's car had indeed been parked on property which was leased to Amtrak as she claimed and whether Amtrak had control over that property and was responsible for security there—were disputed, but stated that while the factual disagreements might affect a finding of liability under state tort law, they were irrelevant to the result under FELA because the commuter cases were controlling.

## DISCUSSION

■ It seems to us that the district court, in focusing on the commuter exception and overlooking the general rule, addressed the case in "a purely formalistic way," an approach which Judge Clark criticized in *Morris v. Pennsylvania R.R.*, 187 F.2d 837, 841 (2d Cir.1951). We begin our analysis by reemphasizing that an employee crossing the worksite either on the way to or leaving the job, within a reasonable time of his or her shift, is within the scope of employment. This rule derives from *Erie Railroad v. Winfield*, 244 U.S. at 173, 37 S.Ct. at 557, where the Supreme Court held:

> In leaving the carrier's yard at the close of his day's work the deceased was but discharging a duty of his employment. See *North Carolina R.R. Co. v. Zachary*, 232 U.S. 248, 260 [34 S.Ct. 305, 309, 58 L.Ed. 591]. Like his trip through the yard to his engine in the morning, it was a necessary incident of his day's work

and partook of the character of that work as a whole, for it was no more an incident of one part than of another.

*Winfield* has been followed by various circuit courts, including our own. In *Powers v. New York Central Railroad*, 251 F.2d 813, 816–17 (2d Cir.1958), we said that "[a]n employee still on the employer's property who is leaving work within a reasonable time after the work day is over is certainly within the protection of the Federal Employers' Liability Act" (citing *Erie R.R. v. Winfield, supra*, and *Morris v. Pennsylvania R.R.*, 187 F.2d at 841). In *Morris* we said, "It is now too late to argue that a worker is within his employment only when actually on the job." 187 F.2d at 841 (citing *Mostyn v. Delaware, L. & W.R.R.*, 160 F.2d 15, 17 (2d Cir.), *cert. denied*, 332 U.S. 770, 68 S.Ct. 82, 92 L.Ed. 355 (1947); *Young v. New York, N.H. & H.R.R.*, 74 F.2d 251, 252 (2d Cir.1934) (when employee has not yet left the premises or has entered on his way to work, he is within his employment, but employment may also begin "before he reaches the premises"). Although some disputed questions of fact remain, it is apparent to us on this record that Schneider's injuries occurred in close physical and temporal proximity to her workplace, and that if the disputed facts are resolved in her favor FELA coverage is appropriate.[2]

As noted above, the district court's reliance on the commuter cases was misplaced. The commuter exception developed not as a limitation on traditional scope of employment analysis, but as a recognition that railroads are an unusual business, in that employees often use company facilities which are essentially unrelated to, and great distances removed from, the employee's workplace. Although the test is not merely one of geography, the fact that a commuting employee is a substantial distance away from his actual worksite when injured is a key factor. In each of the cases relied on by the district court, the employee was injured miles away from his

---

**2.** Because of the dispute over the extent of Amtrak's control/ownership over the parking area, we will not direct a summary judgment in favor of Schneider at this point. We leave it to Judge Burns either to reconsider the affidavits in light of this opinion and determine whether Schneid-

er, as a matter of law, was within the scope of employment, or whether the issue is one properly left for the jury. However, it is clear to us that the district court has threshold jurisdiction. *See United States v. Montreal Trust Co.*, 358 F.2d 239, 242 n. 4 (2d Cir.1966).

**18**

or her workplace. So, for example, in *Metropolitan Coal Co. v. Johnson*, 265 F.2d at 176, the employee was injured in Forest Hills, Massachusetts, while commuting from Rhode Island to his worksite in Boston; in *Getty v. Boston & Maine Corp.*, 505 F.2d at 1226–27, the employee was injured in Woburn, Massachusetts, while commuting to his worksite in Somerville; in *Sassaman v. Pennsylvania Railroad*, 144 F.2d at 951–52, the employee was injured in Newark, New Jersey, while commuting home from his worksite in Jersey City, New Jersey; and in *Quirk v. New York, Chicago & St. Louis Railroad*, 189 F.2d at 98–99, the employee was killed after he had left the worksite in Muncie, Indiana, traveled forty-two miles to Tipton, changed cars, and was driving to his home in Sharpsville, Indiana. In the case of *Kress v. Long Island Railroad*, 526 F.Supp. 856, 860 (S.D.N.Y.1981), upon which the district court placed particular reliance, the employee was injured in a Huntington, Long Island, railroad parking lot, while commuting from her Jamaica, Long Island, worksite, some twenty-five miles away.

All these cases reached the logical conclusion that a railroad employee's workplace does not extend as far as the railroad's tracks do. But none questioned the general rule that an employer's potential FELA liability is not cut off as soon as a shift concludes, or as soon as an employee leaves his or her desk or ticket counter. As we noted in *Powers v. New York Central Railroad*, 251 F.2d at 816, "An employee does not lose his character as an employee at the very moment his working time ends. An employee still on the employer's property who is leaving work within a reasonable time after the work day is over is certainly within the protection of the Federal Employers' Liability Act." (Citations omitted.)

Here, Ms. Schneider was not commuting miles away from Union Station. According to her testimony, she had walked only fifteen to eighteen feet out of the station door and was still on station property when she was attacked entering her car. Surely it was a necessary incident of Schneider's day's work for her to tra-

verse the station premises in order to leave at the end of her shift. *See Erie R.R. v. Winfield*, 244 U.S. at 173, 37 S.Ct. at 557. *Cf. Caillouette v. Baltimore & O. Chi. Term. R.R.*, 705 F.2d at 246 (switchman reporting to work on the wrong side of train yard injured while walking to a shanty to call for an engine to come and take him to the right side of the yard). Schneider's work as a ticket agent was an important part of Amtrak's business in interstate commerce. She was required to work the night shift in a downtown urban area at a station where her evidence indicates the Amtrak police ordinarily saw ticket agents safely from the station to their cars parked in the immediate vicinity.

On remand and trial the issue whether Schneider parked on Amtrak premises and whether by practice or otherwise the Amtrak police generally accompanied the Hartford station ticket agents to the parking area may be determined by the jury, if not predetermined by the court as per note 2 above.

Judgment reversed and cause remanded.