Dolores **SCHNEIDER**, Appellee,

v.

**NATIONAL RAILROAD PASSENGER CORPORATION, Appellant,**

**Greater Hartford Transit District, Appellant.**

**Nos. 1212, 1213, Dockets 92–9185, 92–9305.**

United States Court of Appeals, Second Circuit.

Argued Feb. 2, 1993.

Decided March 4, 1993.

Charles C. Goetsch, New Haven, CT (Cahill, Goetsch & Dipersia, on the brief), *for appellee Dolores Schneider.*

William G. Ballaine, Hartford, CT (Sally S. King, Patricia J–Leary Campanella, David T. Ryan, and Robinson & Cole, on the brief), *for appellant Nat. R.R. Passenger Corp.*

Robert E. Beach, Jr., Hartford, CT (Naab, Beach & Clendaniel, on the brief), *for appellant Greater Hartford Transit Dist.*

Before: MESKILL, Chief Judge, FEINBERG, and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

This appeal is from a $1,750,000 judgment entered in the District of Connecticut, Ellen Bree Burns, *District Judge,* on a jury verdict finding appellant National Railroad Passenger Corp. (Amtrak) liable to appellee Dolores Schneider. The jury also found that appellant Greater Hartford Transit District (GHTD) was not liable to Schneider, but nevertheless found for GHTD in its indemnification action against Amtrak even though no liability was imposed on GHTD.

Schneider was attacked while leaving her job as an Amtrak ticket agent and baggage clerk in Hartford, Connecticut. She sued Amtrak under the Federal Employers' Liability Act (FELA). In an amended complaint, Schneider joined as a defendant GHTD, the landlord of the property, on a theory of common law negligence. Originally the district court entered summary judgment in favor of Amtrak on the ground that Schneider was not acting within the scope of her employment at the time she was attacked. Upon appeal by Schneider, a panel of this Court reversed and remanded the case for further consideration of whether Schneider was acting within the scope of her employment at the time of the attack. *Schneider v. Nat'l R.R. Passenger Corp.,* 854 F.2d 14 (2 Cir. 1988) (Schneider I). On remand, the district court held that Schneider was acting within the scope of her employment. A jury found Amtrak was liable to her for

$1,750,000 in damages. The jury also found that GHTD was not liable for the attack. The jury did find, however, that GHTD was entitled to be indemnified by Amtrak for its attorney's fees.

On appeal, Amtrak asserts, among other things, that Schneider was not acting within the scope of her employment at the time of the attack, and that the award is excessive. GHTD asserts that, since the jury found that it was entitled to indemnification, it should be able to recover its attorney's fees from Amtrak.

## I.

Since this case already has been before this Court, we assume familiarity with it and we summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on this appeal.

Schneider worked for Amtrak for more than eleven years. At the time of the attack in January 1986, she was employed as a ticket agent and baggage clerk. She worked at the Amtrak ticket office located at the Union Railroad Station. Amtrak leased this space from GHTD. The lease dated October 25, 1982 controlled the landlord-tenant relationship. The area outside the ticket office consisted of a sidewalk and an area for Amtrak employees to park their cars along the wall of the station building.

Amtrak's lease gave it the use of the "Public Use Areas" which included the area outside the ticket office. The lease provided that Amtrak "shall not at any time use ... or suffer or permit anyone to use ... the Public Use Areas or do or permit anything to be done in ... the Public Use Areas which causes injury to persons...." At the time of the attack, Amtrak had its own police officers assigned to the Union Railroad Station 24 hours a day with three shifts per day. The officers were responsible for patrolling the Public Use Area. They often escorted the ticket agents to their cars to make sure they got there safely. On the night of the attack, the officer on the 4:00 p.m. to midnight shift was out sick. No one covered for him. There was no security officer patrolling the area on the night of the attack. In fact, because it was Super Bowl Sunday, the officer on the 8 a.m. to 4 p.m. shift left at noon to watch the game, so there was no security from noon until midnight.

Schneider was leaving her shift at about 11:20 p.m. on January 26, 1986. Her car was parked in the Public Use Area, about 15 to 18 feet from the side door nearest the ticket office. She was trying to get into her car. She was attacked for about two hours at knife point and robbed by an unknown assailant who drove her to another location and tried to rape her. As he was trying to rape her, she managed to unlatch the hatchback of her car. She climbed out the back and escaped. She sustained multiple contusions, a laceration of the tendon in her left thumb, and a laceration of the nerve in her left thumb. She underwent three operations on her thumb and shoulder between the attack and February 1987. Since the attack, she has been diagnosed as suffering from depression, post-traumatic stress disorder (PTSD), and mild organic brain syndrome. Amtrak disputes some aspects of this diagnosis.

Schneider returned to her position at Amtrak in April 1987. In December 1987, she was reinjured while moving a mail bin in the course of her employment. In February 1988, she sprained her shoulder while pushing a cart over a railroad crossing. While she has recovered for these injuries in her action against Amtrak, the latter does not raise any issue regarding them on the instant appeal.

After her last accident, she was disqualified from her job as a ticket agent and baggage clerk because she was unable to lift the weight required in her job. Amtrak did offer her a position as an information clerk at New Haven. The position of information clerk would not have involved the physical exertion of her former position, but she would have been required to commute from her home in Agawam, Massachusetts to New Haven, although transportation would have been provided by Am-

trak. Schneider did not accept this position. She said that she was psychologically disqualified from full-time employment, particularly when it would require commuting. She currently is working as a part-time clerk in a drugstore near her home.

Appellee initially commenced an action against Amtrak under the FELA to recover for the injuries she sustained. The parties cross-moved for summary judgment. The court granted summary judgment in favor of Amtrak, holding that the attack and the injuries she sustained did not occur within the scope of her employment. She appealed to our Court from this judgment.

While the appeal was pending, Schneider commenced an action against Amtrak and GHTD, as the lessor, under common law tort principles. Amtrak moved to implead GHTD, in a two-count complaint for indemnification. The first count alleged a common law indemnification claim. The second count alleged a contractual indemnification claim under the lease. GHTD filed a similar counterclaim against Amtrak. Both parties also filed cross-claims against each other for common law and contractual indemnification in the common law negligence action.

Backing up for a moment, on appeal from the summary judgment in favor of Amtrak, we reversed and remanded to the district court to determine whether Schneider was acting within the scope of her employment. We held that, if the area in which she was attacked was under Amtrak's control, she was acting within the scope of her employment. We left it to Judge Burns to determine whether that issue should be submitted to the jury or should be decided as a matter of law.

The district court consolidated the FELA and common law negligence actions after the remand. Upon retrial, the jury returned a verdict in favor of Schneider on all counts against Amtrak and awarded damages for the injuries she sustained in the amount of $1,750,000. The jury also found that GHTD was not negligent, but nevertheless went on to find that Amtrak was liable to GHTD for indemnification. In a post-trial motion, GHTD moved for an award of attorney's fees against Amtrak, based on its entitlement to indemnification from Amtrak. The court denied this motion, holding that the jury finding was moot because no liability was imposed on GHTD and Amtrak owed no indemnification or attorney's fees.

On appeal, Amtrak contends that the question whether Schneider was within the scope of her employment should have been submitted to the jury; that Amtrak was precluded from arguing on summation that Schneider could have mitigated her damages; and that the jury award was excessive. GHTD contends that it was entitled to attorney's fees for its defense in this action.

## II.

### (A) *Amtrak's Claim Regarding Scope of Employment*

■ When this case was last before us, we held that FELA coverage would be appropriate for Schneider if she was acting within the scope of her employment at the time of her attack. *Schneider I, supra,* 854 F.2d at 17. Whether she was within the scope of her employment turned on the extent of control or ownership Amtrak had over the Public Use Area where appellee parked and was attacked. *Id.* at 17 n. 2. Amtrak contends *now* that the *district court on remand* erred in determining this as a matter of law and contends that the question should have been submitted to the jury, since it was a question of fact. The court on remand determined that the question was one of law, since the question of control of the area was provided for in the lease between Amtrak and GHTD. The court was acting on our instructions in our remand where we stated, "We leave it to Judge Burns either to reconsider the affidavits in light of this opinion and determine whether Schneider, as a matter of law, was within the scope of employment, or whether the issue is one properly left for the jury." *Id.* at 17 n. 2. This left to Judge Burns' discretion to determine whether the lease addressed the question of control, thus making it a matter of law to be decided by the court and not to be submitted to a jury.

While GHTD had overall control of the Public Use Area, under the lease Amtrak had use of it and had a measure of control with the responsibility to ensure that employees and passengers were not injured. The language of the lease itself is determinative on the issue of control, and it is clearly a question of law. Indeed, employees were required to affix identification to their cars to park there. Moreover, Amtrak exercised its control of the area by providing for its security by way of 24 hour private police protection.

The cases cited by Amtrak to support its contention that the area was controlled by GHTD, as the landlord, are inapposite. Amtrak relies on *Morgan v. Bucks Assoc.*, 428 F.Supp. 546 (E.D.Pa.1977), and *Dinnan v. Jozwiakowski*, 156 Conn. 432, 242 A.2d 747 (1968), for the proposition that the landlord is liable for and controls common areas of a leasehold. Both of those cases were premised on the fact that the landlord had reserved control over the common area. In *Morgan*, the court explicitly stated that it was the landlord's obligation to keep those areas safe, "in the absence of a contrary provision in the leases." *Morgan, supra*, 428 F.Supp. at 549. While case law may hold that a landlord is obliged to keep common areas reasonably safe, under the terms of the lease in this case the Public Use Areas really were for the benefit of Amtrak. The plain language of the lease stated that Amtrak shall not "permit anything to be done in the Premises *or Public Use Areas* which causes injury to persons...." Lease Agreement, ¶ VI. A. (emphasis added). The lease did impose a duty on the part of Amtrak over the Public Use Areas.

■ Since the lease provided a basis for determining whether Amtrak had control over the Public Use Areas, the court did not err in concluding that whether Schneider was acting within the scope of her employment was a question of law. Amtrak's contention, therefore, that the question should have been submitted to the jury as a question of fact is without merit. Perhaps in cases where the lease makes no mention of control, it might be said to be a question of fact. But here, where the lease did provide for some obligation by Amtrak over the area, it is a question of law. In any event, even if this question were to be submitted to the jury, the jury has already determined that Amtrak was in control of the premises based on its finding of negligence in the common law claim. Therefore, any error in not submitting the issue to the jury would be harmless.

We hold that this question was properly determined by the court.

(B) *Amtrak's Claim Regarding Mitigation of Damages*

*Jones v. Consolidated Rail Corp.*, 800 F.2d 590, 593 (6 Cir.1986), is the governing legal standard for the duty of mitigation of damages in FELA cases. Amtrak cites the case for the proposition that a plaintiff has a duty to mitigate damages. *Id.* Schneider cites it for the proposition that it is a defendant's burden to prove that a plaintiff could have mitigated damages. *Id.*

■ At the close of the evidence the court granted Schneider's motion to preclude Amtrak from arguing to the jury in summation that Schneider's failure to accept a job that Amtrak offered her was a failure on her part to mitigate damages. Amtrak contends that precluding this argument was error, since the question of whether Schneider should have or had mitigated damages was a question of fact for the jury. Under *Jones*, however, it was Amtrak's burden to prove that Schneider could have mitigated her damages. If that burden was not met, the court properly could find that this question should not be argued to the jury.

■ Amtrak's argument that Schneider did not mitigate damages is based on the fact that she did not accept the position offered to her as an information clerk in New Haven. Amtrak was allowed to present to the jury evidence of this job offer. The court instructed the jury regarding the duty a plaintiff has to mitigate damages. The court charged the jury that an injured

party is required to mitigate damages and that, if the jury finds that "the plaintiff [was] physically and psychologically able to resume available employment and she does not do so, she may not recover damages for earnings lost after the date upon which she ... could have been able to return to some form of gainful employment."

There was evidence by Schneider's doctors that she was unfit to accept a full-time job, especially one which required commuting to New Haven from her home in Agawam, Massachusetts. Amtrak did not provide any evidence to show that Schneider was medically able to accept that job.

We hold that the court did not err in precluding Amtrak from arguing in summation that Schneider failed to mitigate damages by not accepting the one job offered to her by Amtrak.

(C) *Amtrak's Claim Of Excessive Damages*

A jury verdict is excessive if it is so high as to "shock judicial conscience." *Nairn v. Nat'l R.R. Passenger Corp.*, 837 F.2d 565, 567 (2 Cir.1988). As the reviewing court, we must make our own "detailed appraisal of the evidence bearing on the damages." *Grunenthal v. Long Island R.R.*, 393 U.S. 156, 159 (1968). In making this appraisal, we must accord substantial deference to the jury's findings of fact. *Smith v. Nat'l R.R. Passenger Corp.*, 856 F.2d 467 (2 Cir.1988).

Amtrak contends that the verdict of $1,750,000 included more than $1,250,000 in intangible damages. This figure is based on Schneider's counsel's request at trial for $489,009 as tangible damages. In her brief, however, she contends that it was possible to find that her tangible losses were higher because evidence was addressed that she quite possibly could have continued to work beyond age 70. She therefore contends that her intangible damages were about $1,000,000.

Amtrak contends that we should look to other cases with similar injuries to determine whether the damages were excessive. *Nairn, supra*, 837 F.2d at 568. While this may be so, in order to make an accurate judgment, we also must consider Schneid-

er's particular injuries. She was attacked in a brutal fashion which left her both physically and mentally impaired. She suffers from PTSD and mild organic brain syndrome, as well as an inability to socialize normally. She has recurring flashbacks about the attack. Her vision is impaired, as is her ability to reason and access information. Although Amtrak challenged her claim of organic brain syndrome, evidence as to that condition was adduced, and the jury may well have determined that she actually suffers from it. She also underwent three operations. She no longer can hold down a full-time job.

The cases cited by Amtrak, while they may be said to be instructive, are not as directly in point as Amtrak would have us believe. While they are said to show that intangible damage awards in the million dollar range tend to be excessive, the fact patterns are not as similar to the instant case as Amtrak asserts. In *Nairn, supra*, the plaintiff sustained only physical injuries. He had a 15% permanent back impairment, but was able to perform another less exerting full-time job. Further, even though he became "depressed," there was no evidence of a chronic psychological or mental disorder, nor did his injury arise from the same type of brutality as here. An excessive award in that case was quite different from that which could be adjudged excessive in the instant case.

The plaintiff in *Paturzo v. Metro–North Commuter R.R.*, 751 F.Supp. 1086 (S.D.N.Y.1990), also cited by Amtrak, sustained physical injuries and complained of PTSD. The court held that the evidence of PTSD was inadmissible. The damage award did not include PTSD suffering, whereas in this case there was substantial evidence adduced that Schneider suffered from PTSD. The jury in this case took that fact into consideration in assessing her damages.

While an award including about $1,000,000 in intangible damages is large, considering all of the relevant factors and circumstances in this case, it was reasonable for

the jury to have made such an award. The verdict does not shock our conscience.

We affirm the jury verdict of $1,750,000.

### (D) GHTD's Claim for Attorney's Fees

■ GHTD has alleged that it is entitled to attorney's fees in defending the indemnification claim and the common law negligence claim. We disagree.

The jury found that GHTD was not liable to Schneider nor was it liable to Amtrak for indemnification. The jury nevertheless found for GHTD in its action for indemnification against Amtrak. The court, however, held that the last finding was superfluous in that GHTD sustained no liability. In denying GHTD's post-trial motion, the court held that GHTD was not entitled to attorney's fees. GHTD in fact had not incurred attorney's fees because its insurer had paid those expenses.

Under the lease, GHTD was entitled to indemnification for any liability arising out of Amtrak's use of the land. GHTD asserts that "liability" should include the cost of defending the action. The court held that liability, undefined in the lease, does not include attorney's fees. While GHTD says that liability is a broad legal term, we hold that attorney's fees are not warranted here.

■ Although attorney's fees are recoverable when incurred in defending a claim where a party is entitled to indemnification, *Gino's Pizza of East Hartford, Inc. v. Kaplan*, 193 Conn. 135, 140, 475 A.2d 305, 308 (1984), no fees were incurred by GHTD here. The attorney's fees were paid by GHTD's insurer, Traveler's Indemnity Company. A party must sustain a loss in order to assert an indemnification claim. *First New Haven National Bank v. Rosenberg*, 33 Conn.Supp. 1, 4, 355 A.2d 319, 321 (1975).

The district court here relied on *State v. Bloomfield Constr., Co.*, 126 Conn. 349, 11 A.2d 382 (1940), in refusing to allow GHTD to recover attorney's fees from Amtrak. In *Bloomfield* the court held that, where the insured had not incurred any expense, it could not recover costs because "it did not make any payments or incur any obligations on account of the defense of [the underlying] suit...." As a subrogee, Aetna also could not recover costs. Similarly, in the instant case, GHTD did not make any payments or incur any obligations for its defense. GHTD, however, asserts that the court misconstrued *Bloomfield*. It contends that the holding there, which denied the award of attorney's fees, actually was based on a showing of no expenses by anyone, insurer or insured. We reject GHTD's contention.

We hold that the court here was correct in relying on the simple proposition that an insured cannot recover costs not incurred.

GHTD's reliance on *Stevens v. Polinsky*, 32 Conn.Supp. 96, 341 A.2d 25 (1974), is unfounded. While that case allowed a party to recover attorney's fees from an indemnitor despite the fact that the verdict finding the indemnitee liable for damages ultimately was set aside, the case specifically referred to "attorneys' fees incurred by the owners in defending the [suit]...." *Id.* at 98 The instant action is distinguishable in that there was no evidence of attorney's fees incurred by the indemnitee—GHTD. If GHTD wanted to recover attorney's fees, it should have presented to the jury evidence of the fees incurred. *Day v. GECC*, 15 Conn.App. 677, 678, *appeal denied*, 209 Conn. 819 (1988) (court reduced damages from $15,001 to $1 because no evidence of attorney's fees had been presented to the jury).

GHTD also asserts that under the lease, Amtrak was required to indemnify GHTD for "any and all liability" and to save GHTD harmless against the costs and expenses of any claim or suit brought against GHTD for which Amtrak had agreed to indemnify GHTD. Even if "liability" would include attorney's fees, the fact remains that GHTD did not pay for attorney's fees. Its insurer did. While GHTD is correct in its assertion that the right to recover damages cannot be based on the existence or non-existence of insurance, *Dzenutis v. Dzenutis*, 200 Conn. 290, 299, 512 A.2d 130 (1986), damages are not at issue here. Despite GHTD's assertion, it is

not being penalized for successfully defending the action. *Pullman Standard, Inc. v. Abex Corp.*, 693 S.W.2d 336, 338 (Tenn.1985). GHTD may have to pay increased insurance premiums because of the action, but it has not spent one cent out of its own pocket to defend itself in this litigation. A party is not entitled to recover costs when no costs have been incurred.

We hold that attorney's fees for GHTD are not warranted in this case.

### III.

To summarize:

The district court properly held that the question of whether Schneider was acting within the scope of her employment was a matter of law and the court decided it correctly. The court did not err in precluding Amtrak from arguing mitigation of damages in its summation. The verdict was not shockingly excessive. GHTD is not entitled to attorney's fees.

Affirmed.