**Elaine GOLDWATER, Plaintiff–Appellant,**

v.

**METRO–NORTH COMMUTER RAILROAD, Defendant–Appellee.**

**No. 1706, Docket 95–9204.**

United States Court of Appeals, Second Circuit.

Argued June 18, 1996.

Decided Dec. 2, 1996.

ployer about it, is by itself insufficient to overcome the deficiency in notice.")

Ira M. Maurer, White Plains, NY (Elkind, Flynn & Maurer, White Plains, NY, of counsel), for Plaintiff–Appellant.

Paul A. Krez, New York City (Krez & Peisner, New York City, of counsel), for Defendant–Appellee.

Before: KEARSE, MAHONEY *, and McLAUGHLIN, Circuit Judges.

KEARSE, Circuit Judge:

Plaintiff Elaine Goldwater appeals from so much of a judgment of the United States District Court for the Southern District of New York, Louis L. Stanton, *Judge*, as dismissed her complaint against her employer, defendant Metro–North Commuter Railroad ("Metro–North"), for damages under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* (1994) ("FELA"), for injuries resulting from an assault that allegedly occurred at Metro–North's Marble Hill Station in New York City while Goldwater was en route to a meeting at a Metro–North facility in Westchester County. In an opinion reported at 906 F.Supp. 173 (1995), the district court granted summary judgment dismissing the complaint, ruling, *inter alia*, that Goldwater's FELA claim was barred by the "commuter rule." Goldwater has appealed, contending that summary judgment dismissing her FELA claim was inappropriate. For the reasons that follow, we agree.

## I. BACKGROUND

For the purposes of this appeal, the pertinent facts are not in dispute, and the present record is summarized below in the light most favorable to Goldwater as the party against whom summary judgment was granted.

Metro–North operates an interstate railroad system. At all pertinent times, Goldwater was employed by Metro–North as an administrative assistant to Joel Bodley, Metro–North's safety manager. Goldwater,

---

* The Honorable J. Daniel Mahoney, who was a member of the panel, died on October 23, 1996, and the appeal is being decided by the remaining two members of the panel, who are in agreement. *See* Local Rule § 0.14(b).

whose scheduled hours were from 8:00 a.m. to 5:00 p.m., ordinarily worked at a Metro–North office in Manhattan but sometimes worked at other locations as directed by Bodley. Goldwater was a salaried employee and was provided a railroad pass, but she was not paid for time spent commuting.

On the morning of January 26, 1993, a safety meeting was scheduled for 10:00 a.m. at the Metro–North facility in Croton–Harmon, in Westchester County, New York, and Bodley had instructed Goldwater to attend. Goldwater decided to take a Metro–North train to the meeting. The complaint alleges that at approximately 8:05 that morning, while waiting at Metro–North's Marble Hill station in the Bronx for a train to take her to Croton–Harmon, Goldwater was assaulted and thrown to the tracks by an unidentified assailant, causing her physical and emotional harm. Goldwater brought the present action in the district court, seeking damages under both FELA and common law.

Metro–North moved for summary judgment dismissing the complaint. To the extent pertinent to this appeal, Metro–North sought dismissal of the FELA claim on the ground that Goldwater's injury occurred while she was on her way to work and that, under the "commuter rule," an employer is not liable under FELA for injuries sustained by an employee while on her way to or from work. The district court granted summary judgment dismissing the complaint, agreeing that the FELA claim was barred by the "commuter rule." *See* 906 F.Supp. at 175–76.

Goldwater has appealed, challenging only the dismissal of the FELA claim. For the reasons that follow, we vacate that part of the judgment and remand for trial.

## II. DISCUSSION

■ Under FELA, a railroad engaged in interstate commerce is liable to "any person suffering injury *while [s]he is employed by* [the railroad] ... resulting in whole or in part from the negligence of [the railroad]." 45 U.S.C. § 51 (emphasis added). FELA is a remedial statute whose remedies were intended to be broad, *see, e.g., Atchison, Topeka & Santa Fe Ry. Co. v. Buell,* 480 U.S. 557, 561–62, 107 S.Ct. 1410, 1413, 94 L.Ed.2d 563

(1987), indeed broader than those available under principles of common-law negligence, *see, e.g., Ulfik v. Metro–North Commuter R.R.,* 77 F.3d 54, 58 (2d Cir.1996); *Marchica v. Long Island R.R.,* 31 F.3d 1197, 1202 (2d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 727, 130 L.Ed.2d 631 (1995). The statute is to be liberally construed to achieve Congress's objectives. *See, e.g., Atchison, Topeka & Santa Fe Ry. Co. v. Buell,* 480 U.S. at 562, 107 S.Ct. at 1414; *Marchica v. Long Island R.R.,* 31 F.3d at 1201–02.

■ FELA's limitation of a railroad's liability to injuries occurring "while [the person] is employed by" the railroad means that it must generally be determined whether the employee was injured while she was acting within the scope of her employment. *See, e.g., Gallose v. Long Island R.R.,* 878 F.2d 80, 84 (2d Cir.1989). "Normally, whether an employee is acting within the scope of employment is a question to be resolved by the jury from all the surrounding circumstances," for "in negligence actions brought under the FELA, ... the role of the jury is significantly greater ... than in common law negligence actions...." *Id.* (internal quotation marks omitted). Indeed, " 'trial by jury is part of the remedy.' " *Johannessen v. Gulf Trading & Transportation Co.,* 633 F.2d 653, 656 (2d Cir.1980) (quoting *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.,* 369 U.S. 355, 360, 82 S.Ct. 780, 784, 7 L.Ed.2d 798 (1962)) (interpreting Jones Act, 46 U.S.C.App. § 688, and noting that same principles apply under Jones Act and FELA).

■ The "commuter rule" exception to FELA liability is a judicial interpretation "developed not as a limitation on traditional scope of employment analysis, but as a recognition that railroads are an unusual business, in that employees often use company facilities which are essentially unrelated to, and great distances removed from, the employee's workplace." *Schneider v. National R.R. Passenger Corp.,* 854 F.2d 14, 17 (2d Cir.1988) ("*Schneider I*"). Thus, we have stated that "generally speaking, [employment] does not include either going to or coming away from the place where the job is carried on." *Young v. New York, N.H. & H.R. Co.,* 74 F.2d 251, 252 (2d Cir.1934) ("*Young*").

Whether that general principle is applicable in a given case, however, will depend on the facts of the case. Though *Young,* for example, was concerned only with whether the route traveled by the plaintiff locomotive fireman after the end of one trip was interstate, *see id.* at 251 ("to recover in this action he had ... to prove that he was engaged in interstate commerce at the time; and this is the only question at issue"), some of the discussion makes plain that the question of whether or not an employee was within the scope of employment is usually a factual question:

Although Young had finished his run when he came back to [the railroad yard], that did not inevitably conclude his employment, or his occupation in interstate commerce.... *Erie R. Co. v. Winfield,* 244 U.S. 170, 173, 37 S.Ct. 556, 557, 61 L.Ed. 1057 ... [1917], a decision from which a good deal of law has sprouted .... does not settle just when he does end his employment, or when he begins it, and, generally speaking, it does not include either going to or coming away from the place where the job is carried on.... *His employment may begin before he reaches the premises. ... Conversely, if there are alternative ways of reaching the job, one across the employer's property and another elsewhere, the employer's liability will depend upon whether it is "reasonably necessary" for the workman to use the first,* or whether he does so merely for his "convenience.".... This last corollary does not mean, as we understand it, that to hold the employer, the workman's choice must be instrumental to the work. For example, it would be untrue, except in a very remote and unreal sense, to say that it helped a railroad to have its workmen cross its railway track rather than go two miles around. The road would for all practical purposes be as well served if they went the long way; and yet it would be "unreasonable" to require them to do so. Although only their own convenience would be met, that would be enough in so extreme a case. Concealed within the phrases used, there is the unconscious solution of a conflict of interest between the two; the workman's convenience and the employer's freedom from responsibility.

Any such solution presupposes that some value has been set on each; but there can be no general principle, for the interests are various, and there is no conventional scale in which they have a recognized place.

*Id.* at 252–53. Accordingly, and consistent with both the "significantly greater" role of the jury in FELA cases and the principle that the question of "whether an employee is acting within the scope of employment is a question to be resolved by the jury from all the surrounding circumstances," *Gallose v. Long Island R.R.,* 878 F.2d at 84, we have in several cases held it inappropriate for the court to decide that the commuter-rule barred the plaintiff's claim as a matter of law. *See, e.g., Schneider I,* 854 F.2d at 18; *Parker v. Long Island R.R.,* 425 F.2d 1013, 1015 (2d Cir.) ("*Parker*"), *cert. denied,* 400 U.S. 829, 91 S.Ct. 57, 27 L.Ed.2d 58 (1970).

In *Schneider I,* for example, a railroad ticket agent was assaulted as she entered her car outside the station after her shift had ended. The district court granted summary judgment dismissing the FELA claim on the ground that because the plaintiff had finished her shift and was on her way home, she was not within the scope of her employment when she was assaulted. On appeal, we "beg[a]n our analysis by reemphasizing that an employee crossing the worksite either on the way to or leaving the job, within a reasonable time of his or her shift, is within the scope of employment." 854 F.2d at 17. Stating that the commuter rule does not alter "the general rule that an employer's potential FELA liability is not cut off as soon as a shift concludes," *id.* at 18, we reversed the granting of summary judgment dismissing the FELA claim. Indeed, we indicated that if there were no question that the railroad, rather than its landlord, had control over the area in which the plaintiff's car was parked, we would direct the entry of partial summary judgment in favor of the plaintiff on that issue. *See id.* at 17 & n. 2; *see also Schneider v. National R.R. Passenger Corp.,* 987 F.2d 132, 135–36 (2d Cir.1993) ("*Schneider II*") (affirming district court's ruling on remand that lease unambiguously gave railroad control over parking area, and that plaintiff therefore was within scope of employment as a matter of law).

In *Parker*, the plaintiff railroad employee was injured when, on his way home after his shift had ended, he fell down steps in the railway station. The fall occurred several hours after the end of his shift, and he apparently had spent the intervening hours consuming alcoholic beverages. Although we noted that "[o]rdinarily travel to and from work is not considered within the time of employment," 425 F.2d at 1015, we observed that the plaintiff was an acting-foreman subject to call by the railroad in emergencies, that he lived 40 miles away from his jobsite, and that he had a railroad pass. We concluded that the nature of the plaintiff's job made it a factual question whether his injury had occurred in the scope of his employment, and we refused to overturn the jury's verdict in his favor. *See id.*

■ These cases, in which we held that the court could not properly rule as a matter of law that the employees in question, injured outside of their shift hours while engaging in their normal commutes to or from their normal worksites, were not injured within the scope of their employment, foreclosed the dismissal of Goldwater's claim on that basis as a matter of law. The record in the district court, viewed in the light most favorable to Goldwater as the party opposing summary judgment, and with all factual inferences drawn in her favor, *see, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986), showed that Goldwater lived in New York City; that, as Goldwater's supervisor knew, Goldwater did not have a driver's license; that on some 50 prior occasions when Goldwater was instructed to attend meetings outside of New York City, she had gone by train; that Metro–North provided her with a free railroad pass; and that aside from a Metro–North train, the only efficient public transportation that Goldwater could have taken from New York City to the January 26 meeting in Westchester would have been a taxi, at considerable expense. The record showed that Goldwater's normal workday began at 8 a.m., and that at 8:05 a.m. on January 26 she was assaulted while on a Metro–North platform awaiting a train to take her to a Metro–North facility away from her normal jobsite for the 10 a.m. meeting

that her Metro–North supervisor had instructed her to attend. Regardless of whether there may be issues as to negligence or causation, it plainly would be permissible for a reasonable juror, crediting Goldwater's testimony, to infer from these circumstances that Goldwater's injury occurred while she was acting within the scope of her employment.

## CONCLUSION

We conclude that the granting of summary judgment dismissing Goldwater's FELA claim was error. Accordingly, we vacate so much of the judgment as dismissed that claim, and we remand for further proceedings not inconsistent with this opinion.

Costs to plaintiff.