Edward J. CAILLOUETTE,
Plaintiff-Appellee,

v.

BALTIMORE & OHIO CHICAGO TERMINAL RAILROAD COMPANY,
Defendant-Appellant.

No. 82–1389.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 4, 1982.
Decided April 14, 1983.

244

Paul V. Esposito, Lewis, Overbeck & Furman, Chicago, Ill., for defendant-appellant.

Donald A. Shapiro, Chicago, Ill., for plaintiff-appellee.

Before WOOD, ESCHBACH and POSNER, Circuit Judges.

ESCHBACH, Circuit Judge.

The Baltimore and Ohio Chicago Terminal Railroad Company ("the Railroad") appeals from a jury verdict in favor of Edward J. Caillouette in the amount of $81,000.00. The action was brought pursuant to the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60. For the reasons below, we affirm.

## I

Caillouette was a switchman employed by the Railroad since 1969. His job was to couple tracks and switch trains within the Railroad's Barr Yard switching yard located in Riverdale, Illinois. The yard spanned a distance of several blocks, bounded by Ashland Avenue on the west side and Halsted Street on the east. Caillouette regularly worked at locations all over the yard, but reported to work each morning at either the caller's office at the Halsted side or the carmen's shanty at the Ashland side. He was informed the day before at which end of the yard his work would begin the next day. If his work was to begin at the Halsted side, he usually parked his car at that end and entered the yard at the Halsted entrance. However, on July 9, 1978, his car was not operating properly and a neighbor gave him a ride to work, dropping him off at the Ashland entrance. This was the first time that he entered the yard on the Ashland side when he was to report at the Halsted side.

Caillouette headed toward the carmen's shanty, intending to call the yard master to request that an engine be sent to take him to the Halsted end of the yard. As he rounded the corner of the shanty, he claims that he tripped over some rusty wire lying on the ground, permanently injuring his knee.

On July 7, 1980, Caillouette brought suit in federal court under FELA. The Railroad was substituted for the original defendant on August 1, 1980. After a jury trial, a verdict was returned in favor of Caillouette in the amount of $90,000.00, which was reduced by $9,000.00 because of the jury's finding of contributory negligence. The Railroad appeals.

## II

The Railroad raises several issues on appeal. First, it contends that the district court lacked subject matter jurisdiction over this action because Caillouette was not engaged in the course of his employment at the time he was injured. Next, the Railroad claims that the evidence established that the Railroad was not negligent and that the sole cause of Caillouette's injury was his own negligence. Third, the Railroad contends that its cross-examination of Caillouette was improperly curtailed. And finally, the Railroad disputes the adequacy and accuracy of the jury instructions.

## III

### A.  Subject Matter Jurisdiction

There is no dispute that if Caillouette had been actually working at the time of his accident, the Railroad would have been subject to suit under FELA. In other words, the Railroad is a "common carrier by railroad ... engaging in [interstate] commerce ...." 45 U.S.C. § 51. The Railroad argues, however, that Caillouette was not yet at work—that he was still in the process of commuting to work—at the time of the accident, and thus this case is outside the scope of FELA.

The Railroad likens this case to those in which a railroad employee was commuting by a free pass on his employer's trains. These employees were on the employers' premises, yet courts have consistently held FELA inapplicable. *E.g., Getty v. Boston & Maine Corp.,* 505 F.2d 1226, 1227–28 (1st Cir.1974); *Metropolitan Coal Co. v. Johnson,* 265 F.2d 173, 178 (1st Cir.1959); *Sassaman v. Pennsylvania Railroad,* 144 F.2d 950, 952–53 (3rd Cir.1944); *cf. Parker v. Long Island Railroad,* 425 F.2d 1013, 1015 (2d Cir.), *cert. denied,* 400 U.S. 829, 91 S.Ct. 57, 27 L.Ed.2d 58 (1970) (exception made when employee was subject to emergency recall and other means of transportation were not feasible); *Quirk v. New York Central & St. Louis Railroad,* 189 F.2d 97, 100–01 (7th Cir.), *cert. denied,* 342 U.S. 871, 72 S.Ct. 105, 96 L.Ed. 655 (1951) (employee returning home in company car not covered by FELA). The Railroad argues that since Caillouette was still several blocks from where he was to report for work and since he was calling a train to take him to that site, this case is governed by the commuter cases in which subject matter jurisdiction was held to be absent.

Caillouette, on the other hand, distinguishes his situation from the commuter cases and argues that this case is governed by those cases that have held that an employee is still covered by FELA when traversing the work site on his way to or from work. *E.g., Erie Railroad v. Winfield,* 244 U.S. 170, 173, 37 S.Ct. 556, 557, 61 L.Ed. 1057 (1916); *Lukon v. Pennsylvania Rail Co.,* 131 F.2d 327, 329 (3rd Cir.1942); *cf. Bountiful Brick Co. v. Giles,* 276 U.S. 154, 158, 48 S.Ct. 221, 222, 72 L.Ed. 507 (1928) (decided under Utah's Workman's Compensation Act).

Consideration of the policies behind the commuter cases, so called, leads us to conclude that this case comes within FELA coverage. Commuters are excluded from coverage for two reasons—they are not required to commute on their employer's trains, and, while commuting, they are in no greater danger than any other member of the commuting public. *Metropolitan Coal v. Johnson, supra,* 365 F.2d at 178; *Sassaman v. Pennsylvania Railroad, supra,* 144 F.2d at 953. Employees traversing the work site are covered because this is a necessary incident of the day's work. *Erie Railroad v. Winfield, supra,* 244 U.S. at 173, 37 S.Ct. at 557.

■ In the instant case, Caillouette was in an area not open to the public and hence was subject to dangers beyond those experienced by the commuting public. He was on his employer's premises at his work-site, though not yet at the exact location where he was to report. He had to, of necessity, cross some part of the worksite to reach the place where he was to report. Though he would have had to travel a shorter distance within the yard if he had entered through the Halsted entrance, we decline to hold that FELA coverage is precluded unless an employee enters his employer's premises by the entrance closest to the location of his work. The scope of FELA must be decided in light of the facts of each particular case. *See Baker v. Texas & Pacific Railway,* 359 U.S. 227, 228, 79 S.Ct. 664, 665, 3 L.Ed.2d 756 (1959) (deciding whether a worker was an employee of

the railroad); *New York Central & Hudson River Railroad v. Carr,* 238 U.S. 260, 263–64, 35 S.Ct. 780, 780–81, 59 L.Ed. 1298 (1915) (deciding whether an employee was engaged in interstate business). In light of the facts presented in this particular case, we hold that FELA does apply and that the district court did have subject matter jurisdiction.

### B. *Negligence*

The Railroad contends that there was no probative evidence to support a jury finding of negligence on its part, and that the record established that the sole proximate cause of Caillouette's accident was his own negligence. The railroad therefore urges us to hold that the district court erred in denying its Motions for a Directed Verdict and Judgment Notwithstanding the Verdict.

■ It is well established that, under FELA, a case must go to the jury if there is any probative evidence to support a finding of even the slightest negligence on the part of the employer, *Rogers v. Missouri Pacific Railroad,* 352 U.S. 500, 506–07, 77 S.Ct. 443, 448–49, 1 L.Ed.2d 493 (1957), and that jury verdicts in favor of plaintiffs can be sustained upon evidence that would not support such a verdict in ordinary tort actions, *Heater v. Chesapeake & Ohio Railway,* 497 F.2d 1243, 1246 (7th Cir.), *cert. denied,* 419 U.S. 1013, 95 S.Ct. 333, 42 L.Ed.2d 287 (1974). An employee's contributory negligence is no bar to relief; damages are simply reduced in proportion to the amount of negligence attributable to the employee. 45 U.S.C. § 53.

■ There is ample evidence in the instant case to support a jury finding of negligence on the part of the Railroad. A security officer employed by the Railroad testified that the wire over which Caillouette claims he tripped was the type generally used by carmen in the yard. He further testified that the ground near the shanty was darkened by oil. Caillouette testified that the coil of wire he tripped over was rusty and consisted of only a few strands, and that he had seen similar wire

stored under a stairway leading to the carmen's shanty. The area where Caillouette claims he was injured is controlled by the Railroad and is not open to the public. From this, a jury could reasonably infer that one or more of the Railroad's employees placed the coil of wire next to the shanty or allowed it to remain there, when due care would dictate placing the wire out of harm's way under the stairway or providing some warning of the hazard. While the Railroad argues that the evidence does not exclude all other possible scenarios (*e.g.*, an interloper came onto the property and placed the wire there), this does not detract from the reasonableness of the inference that the wire was there through the Railroad's negligence. We find this case factually similar to *Webb v. Illinois Central Railroad,* 352 U.S. 512, 77 S.Ct. 451, 1 L.Ed.2d 503 (1957), in which a railroad employee claimed to have tripped on a large cinder embedded in a roadbed which the railroad had covered with five inches of cinder and chat ballast approximately three weeks before the mishap. In answering the railroad's contention that the large cinder could have come from a passing train or a trespasser, the Court stated:

> That there were other possible sources of the clinker would not, of course, justify a directed verdict in light of our conclusion that the evidence supports with reason a jury finding that the [railroad] negligently caused the clinker to be in the ballast used in the repair work and failed to use proper care to discover and remove it. Indeed, we do not think that the evidence would reasonably support a finding that the clinker came from another source.

*Id.* at 515, 77 S.Ct. at 454. We hold that the evidence supports the jury's finding of negligence on the part of the Railroad.

The Railroad argues that the evidence establishes that the sole cause of Caillouette's injuries was his own negligence in either failing to see the wire or in using an unknown route rather than known safe routes into the shanty. We agree that there was evidence that Caillouette was negligent, and, in fact, the jury found him to be ten percent contributorily negligent.

The issue of Caillouette's negligence was properly submitted to the jury and we will not disturb its finding. "The question is not whether we would have reached the same conclusion as did the jury but rather whether there was sufficient evidence to permit the jury to reach the conclusion it did." *Heater v. Chesapeake & Ohio Railway Co., supra,* 497 F.2d at 1247. We hold that the evidence supports the jury's apportionment of negligence between the Railroad and Caillouette.

### C. *Cross-examination of Caillouette*

While cross-examining Caillouette, counsel for the Railroad asked, "And there was not any failure to give any necessary or usual signals, was there?" Caillouette's attorney objected because there had been no testimony about signals up to that point, and the court sustained the objection. Later, when a security guard, a defense witness, was being cross-examined, Caillouette's attorney asked whether he had seen any signs, signals, lights, horses or anything similar to indicate to pedestrians that wire was stored near the building. The Railroad's attorney objected, citing the earlier ruling excluding testimony about warning signals. The court overruled the objection and allowed the guard to answer that there were no such warning devices.

As a general rule, the scope of cross-examination is limited to those areas covered in direct examination, and the court had broad discretion in controlling the scope of cross-examination. *See United States v. Ellison,* 557 F.2d 128, 135 (7th Cir.), *cert. denied,* 434 U.S. 965, 98 S.Ct. 504, 54 L.Ed.2d 450 (1977). The court did not abuse its discretion in its rulings on the cross-examination of either Caillouette or the security guard.

It was not an abuse of discretion to sustain the objection to the question the Railroad asked Caillouette, especially since it referred to "necessary or usual" signals when there had been no foundation laid establishing what signals would be necessary or usual in the circumstances. The court did not completely preclude the Rail-

road from questioning Caillouette about warning signals, but rather ruled only that it could not do so during that cross-examination.

The court did not abuse its discretion in allowing Caillouette to ask the security guard whether there were any warning devices in the area of the shanty. The Railroad had questioned the guard extensively about the area around the carmen's shanty; Caillouette was within the general scope of this line of questioning in asking about the presence of warning devices.

While the court's rulings on these two objections may seem inconsistent, we can conceive of no way in which the Railroad was prejudiced by the manner in which the questioning about warning devices was handled. The Railroad adduced no evidence below and does not suggest on appeal that there were any such devices. Rather, the Railroad says that it wished to prove that no warning devices were necessary. The record shows that the Railroad was given ample opportunity to present and develop its theory that the wire coil was so obvious that no one using due care could have failed to see it. Thus, even if we were to conclude that the seeming inconsistency was error, that error would be harmless.

### D. *Jury Instructions*

The Railroad first objects to several jury instructions because they assume that FELA is applicable to this case. Because we have held that FELA is applicable, this basis for objection has no merit.

The Railroad submitted an instruction stating that a person is ordinarily deemed negligent if he chooses to walk in an unsafe area that a person of ordinary prudence would avoid, if that person had the choice of walking in a reasonably safe area instead. The court rejected this instruction without stating specific grounds for the ruling. Caillouette argues that the rejection was proper because the instruction would have allowed the jury to consider assumption of risk defenses, which are not available under FELA. 45 U.S.C. § 54. The Railroad contends that this instruction does not deal with assumption of risk, but rather

with contributory negligence in failing to use due care in choosing which path to take into the carmen's shanty.

The Railroad also submitted an instruction stating that the nature and extent of a plaintiff's injuries may not be proved by statements as to aches, pains or injuries made to a doctor by a patient. The instruction further states that the jury may consider the accuracy of the patient's statements in determining the weight to be given to the doctor's opinion. The court rejected this instruction as unnecessary. Caillouette argues that giving the instruction would have been prejudicial error.

■■■ The trial court's jury instructions must be considered as a whole, *Pickens— Kane Moving & Storage Co. v. Aero Mayflower Transit Co.*, 468 F.2d 490, 492 (7th Cir.1972), and complaints of an omission in the instruction must be evaluated against the framework of the entire charge, *McGrath v. Wallace Murray Corp.*, 496 F.2d 299, 301 (10th Cir.1974); *Gardner v. Meyers*, 491 F.2d 1184, 1188 (8th Cir.1974). After reviewing the jury instructions as a whole, we conclude that the jury was adequately instructed on the subjects of contributory negligence and assessing the weight and credibility of the evidence. We need not determine whether the submitted instructions would have resulted in prejudicial error if given. We decide only that the jury was adequately instructed on those subjects which the proposed instructions addressed, and therefore failure to give the submitted instructions was not error in this case.

### IV

For the reasons discussed above, the jury verdict in favor of Caillouette is affirmed.