Guillermo PONCE, Plaintiff,

v.

NORTHEAST ILLINOIS REGIONAL COMMUTER RAILROAD CORPORATION, d/b/a Metra/Metropolitan Rail, Defendant.

No. 98 C 7976.

United States District Court,
N.D. Illinois,
Eastern Division.

June 5, 2000.

John Michael Dugan, J. Dillon Hoey, Richard A. Haydu, James Louis Farina, George T. Brugess, Daniel J. Downes, Robert J. Drummond, James Timothy Foley, Hoey, Farina & Downes, Chicago, IL, for Guillermo Ponce.

David R. Schmidt, Mai Lin Petrine Noffke, Lord, Bissell & Brook, Chicago, IL, Ellen Kornichuk Emery, Chicago, IL, for Northeast Illinois Regional Commuter Railroad Corp.

### MEMORANDUM OPINION AND ORDER

SCHENKIER, United States Magistrate Judge.

The parties in this case have filed cross motions for partial summary judgment (doc. 12–1, 18–1), which seek resolution of a single, legal issue central to this case: whether the claims raised by the plaintiff, Guillermo Ponce, for injuries he allegedly suffered on company property when, as he was leaving work, he boarded a train owned and operated by his employer, defendant Northeast Illinois Commuter Railroad Corporation ("METRA"), fall within the scope of Federal Employer's Liability Act ("FELA" or "the Act"), 45 U.S.C. § 51 *et seq.* For the reasons discussed below, the Court finds that plaintiff's injuries fall within the scope of the FELA.[1]

1. By the parties' consent, on February 9, 2000, this case was reassigned to this Court,

## I.

Summary judgment is proper if the record shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999). A genuine issue for trial exists only when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See Liberty Lobby*, 477 U.S. at 249–50, 106 S.Ct. 2505; *Flip Side Prods., Inc. v. Jam Prods. Ltd.*, 843 F.2d 1024, 1032 (7th Cir.1988).

Local Rule 56.1(a) requires a party moving for summary judgment to file a statement of material facts as to which the moving party contends there is no genuine issue. All properly supported material facts set forth in such a statement are deemed admitted unless properly controverted by the opposing party. *See id.; see also Corder v. Lucent Techs., Inc.*, 162 F.3d 924, 927 (7th Cir.1998); *Flaherty v. Gas Research Inst.*, 31 F.3d 451, 453 (7th Cir.1994); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921–22 (7th Cir.1994). Mere denials of a properly supported factual statement are not sufficient to show that a genuine issue of material fact exists. *See Shermer v. Illinois Dep't of Transp.*, 171 F.3d 475, 477 (7th Cir.1999) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Rather, a party must "come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge*, 24 F.3d at 921; *see also Vector–Springfield Properties, Ltd. v. Central Illinois Light Co., Inc.*, 108 F.3d 806, 809 (7th Cir.1997). To meet this burden, a party contesting a motion for summary judgment must counter the affidavits and documents submitted with materials of "evidentiary quality" (*e.g.*, depositions or affidavits) that create a genuine factual issue. *Adler v. Glickman*, 87 F.3d 956, 959 (7th Cir.1996). While the evidence offered need not be in a form that would be admissible at trial, *see Liu v. T & H Mach., Inc.*, 191 F.3d 790, 796 (7th Cir. 1999), the evidence must identify a specific, genuine issue for trial. *See Shermer*, 171 F.3d at 477.

Where cross motions for summary judgment have been submitted, the Court is not required to grant judgment as a matter of law for one side or the other. *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir.1993). Rather, the Court must evaluate each party's motion on its own merits, resolving factual uncertainties and drawing all reasonable inferences against the party whose motion is under consideration. *Id.; Buttitta v. City of Chicago*, 803 F.Supp. 213, 217 (N.D.Ill.1992), *aff'd*, 9 F.3d 1198 (7th Cir.1993). Where motions involve requests for partial summary judgment on the single legal issue of subject matter jurisdiction, Rule 56(c) contemplates that if subject matter jurisdiction is found to exist, the rest of the case will go forward. *See U.S.EEOC v. Warshawsky and Co.*, 768 F.Supp. 647, 657 (N.D.Ill.1991) (in case involving cross motions for partial summary judgment, court found subject matter jurisdiction existed and denied defendant's motion). *See also Capitol Records, Inc. v. Progress Record Dist., Inc.*, 106 F.R.D. 25, 29 (N.D.Ill.1985) (Rule 56(c) allows filing of motion for summary judgment as to single claim).

Both parties have filed motions for summary judgment and, as required, both Mr. Ponce and METRA have filed statements of material, undisputed facts which properly include "references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." UNITED STATES DIST. COURT, N. DIST. OF

pursuant to 28 U.S.C. § 636(c)(1) and Northern District of Illinois Local Rule 73.1(b), for this Court to conduct any and all proceedings in this case, and to enter final judgment (*see* doc. ## 6, 7 and 8).

ILL. LR 56.1. After careful review, the Court finds that there is no genuine dispute regarding the following material facts necessary to establish FELA coverage.

## II.

### A. *The Parties.*

Guillermo Ponce began working for the Illinois Central Railroad in 1976 as a trackman (Def.'s Facts ¶ 1). He transferred out of the track department and became a coach cleaner in 1981 (Def.'s Facts ¶ 2). Mr. Ponce worked as a coach cleaner for the Illinois Central at its 18th Street facility until the line was taken over by METRA in 1987 (Def.'s Facts ¶ 3), and he continued to work in the same job as a coach cleaner for METRA in the same location at 18th Street up to and beyond the day of his accident on January 8, 1997 (Def.'s Facts ¶¶ 4, 59).

### B. *The 18th Street Facility.*

METRA owns and operates the 18th Street facility where Mr. Ponce worked (Def.'s Facts ¶ 3). The coach cleaners work in the buildings shown in Exhibits 1G and 1H (Def.'s Facts ¶ 5). On January 8, 1997, Mr. Ponce worked the 8:15 a.m. to 4:15 p.m. shift cleaning coaches at the 18th Street facility. Mr. Ponce punched out on the time clock in the building at the left side of Exhibit 1G (Def.'s Facts ¶ 20), prior to the scheduled end of his shift at 4:15 p.m.; METRA had a practice of setting its clocks ahead, so that employees who wished to utilize the train could arrive early and punch out early (Pl.'s Add'l Facts ¶ 75), and Mr. Ponce made use of this practice on the day of the alleged accident.[2]

After he punched out on the clock, Mr. Ponce went outside to wait for a METRA train he used to travel to and from work (Def.'s Facts ¶ 21). As was his custom, Mr. Ponce walked out of the building where he was working (shown on the far left side of the picture in Exhibit 1G), walked into a parking lot area, and then came onto the blacktop, crossing the tracks (Def.'s Facts ¶ 22). Normally, he would cross over one or two sets of tracks, depending on what track the METRA train he would be riding arrived on, in order to reach the boarding area for the train (Def.'s Facts ¶ 23).

### C. *The METRA Train and The Boarding Area.*

The blacktop area is located within the 18th Street facility; this facility is METRA property which is not open to the general commuting public, but is only accessible to METRA employees (Def.'s Facts ¶¶ 27, 30; Pl.'s Add'l Facts ¶¶ 61–64, 74). In other words, the 18th Street facility and the blacktop area within it where Mr. Ponce and other METRA employees boarded and exited the METRA train is not a regular commuter stop for the METRA Electric Line (Def.'s Facts ¶ 10; Pl.'s Add'l Facts ¶ 65), but rather is used only for the benefit of METRA employees (Def.'s Facts ¶¶ 10, 30, 31, 35, 43; Pl.'s Add'l Facts ¶ 63). As such, the means by which METRA employees boarded and exited the train at the 18th Street facility differed from the means available at regular commuter stops.

The 18th Street facility does not have a platform for employees to use when boarding the METRA train (Pl.'s Add'l Facts

---

**2.** There is a dispute between the parties regarding whether Mr. Ponce was recalled to duty (*i.e.,* "asked to return to the yard") after he punched out but before he boarded the train, both on the day of the accident and as a matter of course (Def.'s Facts ¶¶ 18–19). This dispute, however, is not material to the issue of FELA coverage in this case, because the case law recognizes that "an employer's potential FELA liability is not cut off as soon as a shift concludes ....", and "[a]n employee does not lose his character as an employee at the very moment his working time ends. An employee still on the employer's property who is leaving work within a reasonable time after the work day is over is certainly within the protection of the Federal Employers' Liability Act." *Powers v. New York Cent. Railroad,* 251 F.2d 813, 816 (2d Cir.1958) (abrogated on grounds not applicable here). *See also infra* discussion at 1055–58 (and cases cited therein).

¶ 67), such as those provided for commuters at regular commuter stops (Pl.'s Add'l Facts ¶¶ 70–74). Instead, employees must board the train by using steps which lead up into the vestibule of the train (Def.'s Facts ¶ 37). Those steps are located beneath a trap door which is latched to the right side of the doorway leading up into the train (Def.'s Facts ¶¶ 38, 41). The trap door performs a different function at the 18th Street facility than at regular commuter stops. When the train picks up employees at the 18th Street facility, the trap door is lifted to allow entry into the train (Def.'s Facts ¶ 39). By contrast, when the train makes stops for commuters at elevated platforms, the trap door is closed or lowered so that it is sitting over the top of the steps, and commuters can walk on top of the trap door as they enter or exit the train (Def.'s Facts ¶¶ 40, 41, 42; Pl.'s Add'l Facts ¶¶ 71–74). Thus, at a regular commuter stop, there is no need to lift the trap door (Pl.'s Add'l Facts ¶ 69).

The METRA train that arrives at the 18th Street facility is not "a special train" operated only for METRA employees, but instead is one that makes stops at regular commuter stations open to the general public (Def.'s Facts ¶¶ 7, 9, 12). However, the general commuting public does not have access to the 18th Street facility. When the train stops at the 18th Street facility in the morning and evening, it is for the sole purpose of allowing METRA employees to board and exit when reporting to or departing from work (Def.'s Facts ¶¶ 10–12). When the train stops at the 18th Street facility, the METRA employees board at the head of the train on the first car (Def.'s Facts ¶ 31). The front end of the train stops on the blacktop, so that employees can step up into the train by way of steps leading up into the vestibule (Def.'s Facts ¶ 35, 37). When the train arrives at the 18th Street facility, it is both within and on METRA property (Pl.'s Add'l Facts ¶ 74; Def.'s Resp. ¶ 74).

**D. *The Alleged Accident.***

On January 8, 1997, Mr. Ponce and George Johnson, a fellow coach cleaner, punched out on the time clock, came out of the building shown in the upper left of Exhibit 1G, and then walked across the blacktop and waited for a train (Def.'s Facts ¶ 25). Three other METRA employees were already on the blacktop waiting for the train (Def.'s Facts ¶ 26). When the commuter train stopped to pick up the employees, the employees opened the outside door of the train and the first employee to go up lifted the trap door and secured it to the latch on the side (Def.'s Facts ¶ 44). Three employees boarded the train before Mr. Ponce (Def.'s Facts ¶ 45). Mr. Ponce had his left foot on the first step, and Mr. Johnson, the fifth employee, was on the blacktop behind him (Def.'s Facts ¶ 46). The employee directly in front of Mr. Ponce, Mr. O'Neill, released the latch on the trap door and it came down on Mr. Ponce (Def.'s Facts ¶¶ 47, 48). Mr. Ponce lifted his right hand to try and hold up the door (Def.'s Facts ¶ 49), but it struck him on his right hand and shoulder (Def.'s Facts ¶ 50). As the trap door came down, Mr. Ponce stepped back off the train, onto the blacktop (Def.'s Facts ¶ 51). At the time of his accident, Mr. Ponce and the other employees were still within the 18th Street yard where they worked (Pl.'s Add'l Facts ¶ 74).

### III.

FELA provides, in relevant part, as follows:

Every common carrier by railroad while engaging in commerce . . . shall be liable in damages to any person suffering injury *while he is employed by such carrier* in such commerce, . . . for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, . . . or other equipment.

Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate . . . com-

merce; ... shall ... be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter. 45 U.S.C. § 51 (emphasis added).

The parties' cross-motions for partial summary judgment do not seek a ruling at this time on the issues of whether METRA was negligent, or whether any of Mr. Ponce's alleged injuries resulted in whole or part from such negligence, or the extent of any injuries Mr. Ponce suffered. Rather, the cross-motions raise the threshold issue of whether FELA applies at all to Mr. Ponce's claims. That issue turns on whether Mr. Ponce was engaged in the course of his employment at the time his accident occurred, a question that the Seventh Circuit has treated as involving subject matter jurisdiction. *See Caillouette v. Balt. & Ohio Chicago Terminal R. Co.*, 705 F.2d 243, 245–46 (7th Cir.1983).

■ The scope of employment under FELA is broadly construed by the federal courts—and has been for more than 80 years. In the seminal FELA case of *Erie Railroad Company v. Winfield*, 244 U.S. 170, 37 S.Ct. 556, 61 L.Ed. 1057 (1917), the Supreme Court held that an employee who leaves the railroad carrier's yard "at the close of his day's work" is engaged in a "necessary incident of his day's work," and thus is "but discharging a duty of his employment." *Id.* at 173.

A decade later, in *Bountiful Brick v. Giles*, 276 U.S. 154, 48 S.Ct. 221, 72 L.Ed. 507 (1928), the Court further explained the parameters of "scope of employment," in a case arising under the Utah's Workman's Compensation Act:

> ... employment includes not only the actual doing of the work, but a reasonable margin of time and space necessary to be used in passing to and from the place where the work is to be done. If the employee be injured while passing, with the express or implied consent of the employer, to or from his work by a way over the employer's premises, or over those of another in such proximity and relation as to be in practical effect a part of the employer's premises, the injury is one arising out of and in the course of the employment as much as though it had happened while the employee was engaged in his work at the place of its performance.

*Id.* at 158, 48 S.Ct. 221. *See also Cudahy Packing Co. v. Parramore*, 263 U.S. 418, 426, 44 S.Ct. 153, 68 L.Ed. 366 (1923) (in a case arising under Utah Workman's Compensation Act, explained that employment contemplates entry upon and departure from the premises as much as it contemplates working there and must include reasonable interval of time for that purpose).

Although *Giles* was decided under Utah's Workman's Compensation Act, rather than FELA, the Supreme Court's discussion of the scope of employment in that case has been cited with approval by the Seventh Circuit in *Caillouette*, a FELA case. In *Caillouette*, the Court of Appeals distinguished cases, on the one hand, where the claimed injuries occurred while the employee was commuting to and from work, from cases where, on the other hand, the claimed injuries occurred on the employer's own premises while the employee was "traversing the work site on [the] way to or from work." 705 F.2d at 245–46. The appeals court explained that "commuter cases" are excluded from coverage because the employees are not required to use the employer's trains while traveling to and from work, and when they do so, "they are in no greater danger than any other member of the commuting public." *Id.* at 246. By contrast, the policies underlying the exclusion of coverage in commuter cases do not apply to employees traversing the employer's work site. When crossing the work site, an employee is in an area "not open to the public," and thus is "subject to dangers beyond those experienced by the commuting public." *Id.* Moreover, traversing the work site "is a necessary incident of the day's work." *Id.* (citing *Winfield*, 244 U.S. at 173, 37 S.Ct. 556).

■ A review of cases decided both before and after *Caillouette* reveals that the "commuter" cases generally occur off the work site, usually on the employer's train or other property some distance from the work site. In these cases, as a general rule, courts have held that an employee injured while commuting to and from work is not covered by FELA. *See Quirk v. New York, C. & St. L. R.R.*, 189 F.2d 97 (7th Cir.1951) (no FELA coverage where railroad foreman took company car to travel home and on journey collided with fellow employee using another company car). *See also Sassaman v. Pennsylvania R. Co.*, 144 F.2d 950, 952–53 (3rd Cir.1944) (no FELA coverage where train dispatcher riding employer's intrastate train home after work injured alighting from train on commuter station platform nine miles from normal place of work); *Metropolitan Coal Co. v. Johnson*, 265 F.2d 173, 178 (1st Cir.1959) (no FELA coverage where freight train flagman who chose to ride employer's express passenger train to work injured when train ran over steel cable); *Getty v. Boston & Maine Corp.*, 505 F.2d 1226 (1st Cir.1974) (no FELA coverage where railroad carman slipped on ice that accumulated on commuter station platform); *Thompson v. National Railroad Passenger Corp.*, 774 F.Supp. 1087, 1088 (N.D.Ill.1991) (no FELA coverage where AMTRAK waiter commuting from Michigan home to Chicago work site on employer's train with free pass collided with truck).

■ The "traversing" cases, on the other hand, generally occur on the employer's work site while the employee is attempting to report to or leave the job within a reasonable time of his or her shift, and is exposed to risks not confronted by the public generally. In such cases, courts generally have held that FELA provides coverage. *See Winfield*, 244 U.S. 170, 37 S.Ct. 556; *Caillouette*, 705 F.2d 243. *See also Lukon v. Pennsylvania R. Co.*, 131 F.2d 327, 329 (3rd Cir.1942) (FELA covered injuries sustained by member of railroad gang when train hit him on his way to return employer's tools to employer's tool house); *Schneider v. National Railroad Passenger Corp.*, 854 F.2d 14 (2d Cir.1988) (FELA covered injuries sustained by railroad ticket agent from attacker in company parking lot where she parked car).[3]

■ These cases underscore what the Seventh Circuit observed in *Caillouette:* that whether a case falls within the "commuter" rule or the "traversing" rule is driven by the facts of that particular case. 705 F.2d at 246. In general, however, the two lines of cases teach that whether an injury is the result of commuting or traversing turns principally on (1) whether the employee is on the work site itself, and thus is exposed to risks to which the general public is not subject, and (2) whether he or she is within reasonable proximity—both in terms of time and space—to where the actual work was performed that day. *See Schneider*, 854 F.2d at 17 ("[a]n employee still on the employer's property who is leaving work within a reasonable time after the work day is over is certainly within the protection of [FELA]"). *Cf. Goldwater v. Metro–North Commuter Railroad*, 101 F.3d 296, 298 (2d Cir.1996) (*citing Young v. New York, N.H. & H.R. Co.*, 74 F.2d 251 (2d Cir.1934), for the proposition that employment does not necessarily require an employee to be "going to or coming away from the place where the job is carried on .... employment may begin before [one] reaches the [employer's] premises" so long as the activity engaged in by the employee at the time of injury is "reasonably necessary" for the employee

---

3. Courts also have held FELA applies to situations where a railroad requires the employee to use a special conveyance to and from work. *See Metropolitan Coal Co.*, 265 F.2d at 178 (noting that an injury on an employer's train when the employee is required to use that train is equivalent to a traversing injury where the employee is required to report to or leave the job site); *see also Thompson v. National Railroad Passenger Corp.*, 774 F.Supp. 1087, 1088 (N.D.Ill.1991) (noting the standard articulated in *Metropolitan Coal*). That particular factual scenario is not presented here.

to do the job). The locus of the injury is critical to determining whether an employee is within the scope of employment, because the policy behind FELA is to protect railway workers from the dangers associated with railway work, not the risks of commuting to which all passengers are exposed. *See Caillouette*, 705 F.2d at 246.

## IV.

■ METRA claims that it is entitled to summary judgment against Mr. Ponce because the "judicially-developed 'commuter rule' bars recovery under FELA for injuries sustained while commuting to or from work" (Def.'s Mem. at 2). Conversely, Mr. Ponce claims that he is entitled to summary judgment against METRA on the issue of subject matter jurisdiction because FELA covers injuries that, like his alleged injuries, occur while an employee is leaving the employer's premises at the end of a workday. Although the Court is not required to grant summary judgment for one side or the other simply because cross motions have been filed, the Court agrees the undisputed facts allow this Court to determine that, as a matter of law, FELA applies and vests this Court with subject matter jurisdiction. The Court holds that the undisputed material facts establish that this case falls within the "traversing" doctrine of *Caillouette*: Mr. Ponce was injured on METRA property, in close proximity to his actual work site, shortly after he punched out of his shift, as he boarded his employer's commuter train— at a stop and through an entrance not generally available to commuters.

In *Caillouette*, the plaintiff was a railroad switchman who regularly worked "at locations all over the yard" but who reported to work at one of two work sites each day. Mr. Caillouette was dropped off at work by a friend on a side of the yard opposite to where he was to report to work. Intending to request an engine to take him to his work site, Mr. Caillouette headed toward a carmen's shanty, an unfamiliar terrain, when he tripped over some rusty wire lying on the ground and permanently injured his knee. The Court of Appeals found that Mr. Caillouette's injuries were covered by FELA under the "traversing" cases. In particular, the *Caillouette* Court found that the plaintiff was not a "commuter" because he was (1) "in an area not open to the public" and "was subject to dangers beyond those experienced by the commuting public"; and (2) "[h]e was on his employer's premises at his work site, though not yet at the exact location where he was to report[,]" and "had to, of necessity, cross some portion of the work site to reach the place where he was to report." 705 F.2d at 246.

In this case, as in *Caillouette*, Mr. Ponce was injured in the time and space necessary for him to use the train to leave his work site and begin his commute home. The commute had not begun yet because Mr. Ponce was still on METRA property when he was injured; the METRA train actually came into the employee work site (the property boundaries of the 18th Street facility) to pick up employees after their work shift had ended, and Mr. Ponce was injured as he boarded the train at that location. And while METRA did not require its employees to use the train, METRA actively facilitated employee use of the train by adjusting the employees' time clocks so they could board the train at 18th Street as the train made its way to the regular commuter stops farther down the line.

■ Moreover, as in *Caillouette*, Mr. Ponce allegedly was injured due to a hazard to which the regular commuting public was not exposed, namely, the method in which Mr. Ponce was required by his employer to board the train. Mr. Ponce and other METRA employees boarded the train by stairs leading up into the vestibule through a trap door; and Mr. Ponce claims he was injured by the trap door falling on him as he attempted to board the train. Although METRA claims that some commuters are required to use steps that lead through the trap door, that claim is not supported by evidentiary materials sufficient to create a genuine fact dispute. *See*

*Adler*, 87 F.3d at 959.[4] Thus, the Court deems as admitted Mr. Ponce's factual assertion that the use of stairs and the trap door is only required for employees who board the train at 18th Street. *See* Pl.'s Add'l Facts ¶¶ 68, 70; *Cf.* Pl.'s Add'l Facts ¶¶ 71–73. Based on this and the other undisputed facts, the Court concludes that Mr. Ponce's claims fall with the coverage of FELA.

METRA makes four arguments in its attempt to distinguish this case from the "traversing" cases that fall within FELA coverage.[5] We address each of those arguments in turn.

### A.

■ METRA contends that Mr. Ponce was outside the scope of his employment because his pay period ended when he punched out on the time clock and his shift was done for the day. In other words, METRA argues that because Mr. Ponce was not being compensated at the time of his injury, he cannot be considered within the scope of his employment for FELA purposes (Def.'s Mem. at 4). This argument is unpersuasive, as FELA covers employee injuries that occur within a reasonable time before or after the employee's regular work hours—even if the employee is not being paid at the time. *See Erie R. Co.*, 244 U.S. at 173, 37 S.Ct. 556 (leaving work at the end of the day is a "necessary incident" of a day's work).

4. METRA has attached a complaint from another pending state court case as an exhibit to its Reply Memorandum to support its position that regular commuters sometimes use steps leading through the trap door to board METRA trains (Def.'s Reply 3–4, Ex. A). That submission—which recites only an unproven allegation—does not constitute the evidentiary materials contemplated by Local Rule 56.1, which are necessary to create a genuine factual issue. And even if METRA's submission were sufficient to show that commuters *sometimes* used the trap door, that would not show that commuters *generally* use the trap door.

5. At the outset, the Court rejects METRA's contention that the traversing cases are an "exception" and commuter cases the "rule." The case that METRA cites for that proposi-

Here, the undisputed facts establish that Mr. Ponce's regular work shift was scheduled to end at 4:15 p.m. each day, and that METRA changed the time on its clocks to allow employees to punch in early and to punch out early so that they could use the commuter train. Given these facts, the Court concludes that under the applicable authorities, Mr. Ponce's injury occurred within the scope of his employment. *E.g., Erie Railroad Co.*, 244 U.S. at 173–74, 37 S.Ct. 556; *Young v. New York, N.H. & H.R. Co.*, 74 F.2d 251, 252 (2d Cir.1934); *Caillouette*, 705 F.2d at 246; *Schneider*, 854 F.2d at 16–17. The case relied upon by METRA, *Parker v. Long Island R.R.*, 425 F.2d 1013, 1014–15 (2d Cir.1970), is not to the contrary. *Parker* merely mentions that if an employee is compensated for time spent traveling home, that fact may be considered in the overall analysis on scope of employment. *Parker* does not establish that the absence of compensation precludes a finding that an injury occurred in the scope of employment.

### B.

METRA argues that Mr. Ponce was not "traversing" the premises of the 18th Street yard because he was injured while boarding a METRA commuter train (Def.'s Reply at 3). METRA contends that once Mr. Ponce stepped on board the METRA train, he was a "commuter" under the line of cases where the employee

tion, *Goldwater v. Metro–North Commuter Railroad*, 906 F.Supp. 173 (S.D.N.Y.1995) (Def.'s Mem. at 3–4), is not persuasive authority: it was reversed on appeal by the Second Circuit Court of Appeals on the ground that factual disputes precluded summary judgment on the issue of whether the plaintiff was within the scope of her employment at the time of her injury. More fundamentally, we do not find it helpful to characterize commuter or traversing cases as either an exception or a rule, as those labels tend to obscure the critical question for this Court: whether the facts of this case show that an alleged injury occurred within the "scope of employment," as that term has been interpreted by the Supreme Court in *Erie Railroad* and the Seventh Circuit in *Caillouette*.

was injured on the employer's train while commuting to or from work (Def.'s Reply at 3, citing *Getty*, 505 F.2d at 1227–28; *Metropolitan Coal Co.*, 265 F.2d at 178; *Sassaman*, 144 F.2d at 952–53; and *Thompson*, 774 F.Supp. at 1088). However, the cases cited by METRA do not support its sweeping assertion. METRA's argument also ignores that while the METRA train was open generally to commuters, at the 18th Street yard it was not generally open to commuters: at that stop the train could be boarded only by METRA employees, and the means of boarding exposed METRA employees to risks not generally presented to commuters. Under the foregoing case law, those facts are central to the analysis.

Equally unavailing is METRA's attempt to categorize the "fact that the train itself had not yet left 18th Street" as "irrelevant to this case" (Def.'s Reply at 3). The fact that the train had not left the 18th Street yard is a central difference between this case and the commuter cases. *See Young*, 74 F.2d at 252 (employee still within scope of employment when he has not yet left the premises); *Schneider*, 854 F.2d at 17 (FELA coverage appropriate where facts establish that employee's injuries occurred in close physical and temporal proximity).

### C.

 METRA argues that Mr. Ponce's injury occurred outside the scope of his employment because METRA did not compel him to use the train; rather, Mr. Ponce chose to take the train to his job rather than some other form of transportation. In support of this argument, METRA cites cases which refused to extend FELA coverage to employees who sustained injuries "en route to or from work unless the employer required the employee to use that

route" or that "mode of travel." (Def.'s Mem. at 5, citing *Kress v. Long Island R.R.*, 526 F.Supp. 856, 859 (S.D.N.Y.1981); *Quirk v. New York, C. & St. L.R.R.*, 189 F.2d 97, 100 (7th Cir.1951); and *Metropolitan Coal Co. v. Johnson*, 265 F.2d 173, 178 (1st Cir.1959)). That argument is a non-starter: in each of those cases, the employee's injury occurred on a part of the employer's premises (*e.g.*, the train or a commuter station platform or stairway) that was not located on the employee's work site but rather some distance away. "Although the test is not merely one of geography, the fact that a commuting employee is a substantial distance away from his actual work site when injured is a key factor." 854 F.2d at 17. By contrast, when Mr. Ponce allegedly was injured, he was still on the work site and near to where he performed his duties.

What's more, although he was not required to take the train, Mr. Ponce was required to leave his job site as an "incident" of his work. And it was certainly expected by METRA that its employees would use the train—METRA facilitated (if not encouraged) its use by adjusting the punch out time. The trap door on the METRA train, like the rusty wire lying on the ground in *Caillouette*, was located on the employer's work site and served as the means by which the injury occurred. As in *Caillouette*, Mr. Ponce's alleged injury occurred while he was traversing the work site, and is covered by FELA.[6]

### D.

Finally, METRA makes the related, but equally unavailing argument that Mr. Ponce "was not required to traverse the area of the yard where the train stopped

---

**6.** We are not persuaded by METRA's attempt to distinguish *Caillouette* on the ground that the rusty wire that caused the injury there was an "inherent" condition of the premises because it lay upon the ground of the work site, whereas the trap door was on the train which was not always on the work site (Def.'s Mem. at 9–10). The Court sees no material difference between the trap door on the train

and the rusty wire lying on the ground. Both were encountered by the plaintiffs while performing the "necessary incident" of employment of reporting to or leaving work; both were alleged hazards encountered on the work site (and the train clearly was brought onto the site by the employer); both were hazards not generally encountered by persons other than the defendant's employees.

to pick him up, let alone the inside of the train where he was actually injured" (Def.'s Mem. at 7). METRA contends that *Sassaman v. Pennsylvania R. Co.*, 144 F.2d 950 (3d Cir.1944) and *Erie Railroad Co. v. Winfield*, 244 U.S. 170, 37 S.Ct. 556, 61 L.Ed. 1057 (1917), stand for the proposition that FELA does not apply unless the injuries are the result of conditions or instrumentalities inherent to the premises or a "necessary incident" to the discharge of the employee's work duties (*Id.*).

 We believe that METRA misreads the holdings of these cases. The "necessary incident" language of *Erie* refers to what the employee was doing when injured, and not the instrumentality that caused the injury. In *Parramore*, 263 U.S. 418, 44 S.Ct. 153, 68 L.Ed. 366, and *Giles*, 276 U.S. 154, 48 S.Ct. 221, 72 L.Ed. 507 (1928), the Supreme Court held that the scope of employment may begin before an employee reaches or after the employee leaves the premises, so long as the way or method traveled is one that the employer gives the employee consent to use in "passing to and from the place where the work is to be done." *Giles*, 276 U.S. at 158, 48 S.Ct. 221. *Cf. Young*, 74 F.2d at 252 (noting extension of employment scope articulated in *Parramore* and *Giles*). And, the fact that it was not "necessary" for Mr. Ponce to use the train is of no moment. We do not read these cases to require that the "means of ingress and egress" to the work site used by employees "with the express or implied consent of the employer" be the *only* means available in order to fall within the scope of employ-

ment, as METRA suggests (METRA Mem. at 8; METRA Reply Mem. at 2–3). Here, even if Mr. Ponce had other ways to reach or depart 18th Street facility, other than the METRA commuter train, METRA's affirmative invitation to use the train, evidenced by its facilitation of the time clock (*i.e.*, advancing the time for punching in and out to coordinate employee schedules with the commuter train's schedule) more than adequately serves as the basis for consent.[7]

## CONCLUSION

The Court concludes that the undisputed material facts establish that Mr. Ponce was within the scope of his employment on January 8, 1997, when he allegedly was injured as he attempted to board the METRA commuter train that stopped at the 18th Street facility. Accordingly, the Court enters summary judgment in favor of Mr. Ponce and against METRA on the issue of this Court's subject matter jurisdiction under FELA. On that issue, the plaintiff's motion for summary judgment (doc. # 18–1) is granted, and the defendant's motion for summary judgment (doc. # 12–1) is denied. The Court's summary judgment ruling leaves for another day the remaining issues of liability and damages on Mr. Ponce's claims.

---

7. METRA claims that if "Mr. Ponce had chosen to commute to work in a co-worker's automobile, rather than take the train," and "cut his hand on a piece of metal protruding from the door frame" then "no liability under ... FELA would attach ... even though the co-worker's car was still in the employee parking lot" (Def.'s Mem. at 10). This hypothetical is unpersuasive, because it is squarely answered by *Schneider v. National Railroad Passenger Corp.*, 854 F.2d 14 (2d Cir.1988). *Schneider* answers METRA's hypothetical argument by making an unarticulated, but important distinction between a hazard on the employer's premises that the employee brings

with him or her from home and one that the employee merely encounters there (*i.e.*, the unknown attacker, the rusty wire or the METRA train that the employer sends to the work site to pick the employee up for the day). *See id.* at 16, 18 (Amtrak police officers were assigned to parking lot areas used by Amtrak employees for the very purpose of protecting employees on Amtrak premises from being accosted). METRA's argument also ignores that the hazard Mr. Ponce allegedly encountered was not one that he or a co-employee brought to work: it was a METRA train that METRA itself brought to the work site.