In the

# United States Court of Appeals
## For the Seventh Circuit

No. 19-1187

RITA GUERRERO, individually and as the Special Administrator of the Estate of Celso N. Guerrero,

*Plaintiff-Appellant,*

*v.*

BNSF RAILWAY COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 1:17-cv-01044-MMM-JEH – **Michael M. Mihm,** *Judge.*

ARGUED MAY 28, 2019 — DECIDED JULY 17, 2019

Before WOOD, *Chief Judge*, and BAUER and EASTERBROOK, *Circuit Judges*.

WOOD, *Chief Judge*. Behind the legal question we must resolve in this case is a sad story: as Celso Guerrero was trying to drive to his job at BNSF Railway through a snowstorm early one morning, his car skidded, it collided with a snowplow, and he was killed. His widow, Rita Guerrero, who appears on

her own behalf and as administrator of her late husband's es-
tate, is seeking compensatory money damages from BNSF.
(Our references in this opinion to Guerrero refer to Celso
Guerrero, unless the context requires otherwise.) The district
court concluded that Guerrero was not acting within the
scope of his employment when the fatal accident occurred,
and thus the Federal Employer's Liability Act (FELA) does not
apply to the case. In our view, the question of work status is a
close one, but it is one that we need not resolve. No jury could
find that BNSF was negligent in any action it took or failed to
take with respect to Guerrero, and so on that ground we af-
firm the district court's judgment.

## I

We take our account of the undisputed facts from the dis-
trict court's opinion, recognizing that this case was resolved
through a motion for summary judgment, and so (as the dis-
trict court also did), we accept the facts in the light most fa-
vorable to the opponent of the motion, Guerrero.

Celso Guerrero was a machine operator for BNSF. His nor-
mal schedule required him to work from Monday through
Friday, but he was subject to possible overtime work at other
times. His primary duty was track repair, but he was also ex-
pected to perform other tasks as needed, including snow re-
moval. On Saturday, January 31, 2015, Guerrero received a
telephone call around 6:00 p.m. from Nick Burwell, the BNSF
Roadmaster in charge of track maintenance for the Galesburg,
Illinois, railyard and surrounding area. Burwell told Guerrero
that a significant snowstorm was expected, and so he was
looking for employees to clear snow from the tracks starting
the next morning at 7:00 a.m. at the Galesburg facility. In mak-

ing these calls, Burwell followed a union seniority list. Guer-rero was not required to accept this work opportunity, but he did. From that point onward, we can assume that BNSF was relying on him to show up at the assigned time, and he at a minimum would have had to notify the company if he no longer wanted to accept the extra work.

Driving his personal vehicle, Guerrero left his home in Kewanee, Illinois (about 40 miles northeast of Galesburg) at 5:00 a.m. on February 1. The predicted snowstorm was under-way, and it was snowing hard as Guerrero drove along Illi-nois Route 34. The National Weather Service documented at least four, but likely closer to eight, inches of snow cover along his route. *Interactive Snow Information, Modeled Snow Depth for 2015 February 1, 12:00 UTC*, THE NATIONAL WEATHER SERVICE'S NATIONAL OPERATIONAL HYDRAULIC REMOTE SENSING CENTER, https://www.nohrsc.noaa.gov/interac-tive/html/map.html (Physical Element "Snow Depth"; Date "February 1, 2015, 12:00 UTC"; City, ST "Galesburg, IL"). While heading southbound, near Oneida, his car slid on the roadway, spun across the median, and collided with a snow-plow being operated by the Illinois Department of Transpor-tation (IDOT); the plow was in the northbound lane. Guerrero was severely injured and died the next day in the hospital. Illinois State Trooper Carrie Worsfold responded to the colli-sion. Commenting that "I was the plow, it felt like," she re-called that the road was completely covered with snow—maybe three inches or more.

## II

Rita Guerrero, suing in her own right and for Guerrero's Estate, filed this action under the FELA, 45 U.S.C. §§ 51–59. Asserting that her husband was killed while he was on duty

and acting within the scope of his employment, she sought compensatory damages. BNSF took issue with her assertion that Guerrero was on duty at the time of his injury; it contended that he was merely commuting to work, as he did for his normal shift every day, and that commuting falls outside the scope of employment in this situation. BNSF argued in the alternative that no trier of fact could find that BNSF was negligent either by act or omission, and that this was an independent reason for judgment in its favor. On BNSF's motion for summary judgment, the district court ruled that Guerrero's fatal injury occurred at a time when he was not acting within the scope of his employment. The FELA thus did not apply—a conclusion to which the judge attached jurisdictional significance. Without addressing BNSF's negligence argument, the judge granted summary judgment in BNSF's favor, presumably with prejudice, since the judgment document does not specify otherwise and makes no mention of a jurisdictional ground for dismissal. See FED. R. CIV. P. 41(b); *Swanigan v. City of Chicago*, 775 F.3d 953, 959 n.2 (7th Cir. 2015). Guerrero has appealed.

## III

Although the parties spend most of their time arguing over the district court's finding about scope of employment, we have much less to say about that, and more to say about BNSF's alternate, negligence-based argument. The reason is simple: it appears to us that there are disputed issues of material fact on the former point that would preclude summary judgment, but there are no such issues on the latter point.

A

Before turning to the merits, we need to say a word about jurisdiction. Citing *Caillouette v. Balt. & Ohio Chicago Terminal R. Co.*, 705 F.2d 243, 245–46 (7th Cir. 1983), the district court held that the answer to the question whether the FELA covers Guerrero's claims—here, the answer to the question whether Guerrero was within the scope of his employment when the accident occurred—"implicates the Court's subject matter jurisdiction." It is true that the *Caillouette* court's discussion of FELA coverage appears in a section headed "Subject Matter Jurisdiction." But saying so does not make it so. All the court actually held in *Caillouette* was that the injured rail worker was indeed acting within the scope of his employment when he walked across a rail yard, and it affirmed a jury verdict in the worker's favor.

Quite a bit of water has gone under the bridge since 1983, when *Caillouette* characterized a question relating to the scope of coverage under a statute as one affecting the district court's subject-matter jurisdiction. In *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006), the Supreme Court endeavored to clarify the difference between "federal-court 'subject-matter' jurisdiction over a controversy; and the essential ingredients of a federal claim for relief." *Id.* at 503. In that case, it held that the provision in Title VII of the Civil Rights Act limiting its coverage to employers having 15 or more employees does not affect subject-matter jurisdiction. Instead, it simply "delineates a substantive ingredient of a Title VII claim for relief." *Id.* Later decisions from the Supreme Court have made clear that this was not a mere quirk of Title VII law. Over and over, the Court has stressed the difference between the fundamental power to ad-

judicate a claim (*i.e.* something affecting subject-matter juris-
diction) and lesser restrictions, including claim-processing
rules and ingredients of a claim. See, *e.g.*, *Fort Bend Cnty., Texas
v. Davis*, 139 S. Ct. 1843 (2019) (administrative charge-filing
requirement under Title VII is a mandatory, but non-jurisdic-
tional, prerequisite to suit); *Morrison v. National Australia Bank
Ltd.*, 561 U.S. 247 (2010) (extent of extraterritorial reach of se-
curities statute relates to scope of statute, not subject-matter
jurisdiction); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010)
(Copyright Act's registration requirement is precondition to
suit, but does not affect subject-matter jurisdiction).

The import of those cases is unmistakable: unless Con-
gress has unambiguously said in a statute that a particular
limitation affects the district court's subject-matter jurisdic-
tion, a limitation on the right to recover (such as number of
employees, or extraterritorial reach, or scope of employment)
describes an element of the case. Nothing in the FELA com-
pels the conclusion that the merits of a claim and subject-mat-
ter jurisdiction are conflated for its purposes. The question be-
fore us is thus only whether Guerrero has alleged enough to
survive summary judgment on the scope-of-employment is-
sue. BNSF properly preserved this point in the district court,
and so the fact that it would be too late now to inject that issue
into the case is of no moment.

B

The federal reporters are littered with cases examining
whether the FELA applies to an employee injured while he or
she is commuting to or from work. Often the answer is no:
courts generally hold that the employee is on her own during
the commute and does not report to work until she has
reached her place of employment. Some cases, however, slip

into a gray area. For example, employment status is often contested where a commuter is injured while traveling to or from work on the same railway that employs her, using a pass issued by the employer. Nonetheless, those cases usually find that the travel is outside the scope of employment. We have noted that those commuters "are excluded from [FELA] coverage for two reasons—they are not required to commute on their employer's trains, and while commuting, they are in no greater danger than any other member of the commuting public." *Caillouette*, 705 F.2d at 246 (citing *Sassaman v. Pennsylvania R.*, 144 F.2d 950, 953 (3d Cir. 1944)); *Metropolitan Coal Co. v. Johnson*, 265 F.2d 173, 178 (1st Cir. 1959). A second group of borderline cases includes those in which an employee has just clocked out, or not yet clocked in, but is traversing the work site on her way to or from her assigned post when she is injured. Those cases typically uphold FELA coverage, because "traversing the work site … is a necessary incident of the day's work." *Id.* (citing *Erie Railroad Co. v. Winfield*, 244 U.S. 170, 173 (1917). Relying on the former line of cases, the district court found that Guerrero's accident occurred while he was on his way to work, far from his worksite, as he drove his personal vehicle on a public highway and faced dangers identical to the rest of the commuting public.

But the situation is more complex than that. With respect to the last point, evidence in the record (for example, Trooper Worsfold's testimony that she was "the plow," implying that she was the first to drive on the newly fallen snow) indicated that members of the commuting public were not out and about—they were waiting out the storm until IDOT could clear the roads and render them passable. Guerrero's commitment to BNSF thus distinguished him from the general population. In addition, Guerrero was not heading to work for his

normal job, which as we noted ran from Monday through Friday. He had accepted a special assignment, and once he accepted it, BNSF was relying on him to show up. Guerrero notes that the union contract to which he was subject provides that "the time of an employee who is called after release from duty to report for work will begin *at the time called* and will end at the time he returns to designated point at headquarters." (Emphasis added.) Burwell called Guerrero at 6:00 p.m. on January 31 and obtained Guerrero's agreement to be at the Galesburg facility by 7:00 a.m. the next morning. Recognizing the adverse conditions caused by the snow, Guerrero budgeted a full two hours to drive the 40 miles between his home and the railyard. In addition, the record shows that Burwell later approved a settlement for Guerrero's wages from the 6:00 p.m. telephone call until the planned time of arrival the next morning. Although BNSF insists that Burwell erred in doing so, a jury would not be required to accept that explanation. Taking that fact favorably to Guerrero, it is evidence that he was not commuting, but instead was "on the clock" and working on the special assignment at the time of the crash.

We set forth these competing views of the record to show why the question of scope of employment is not a straightforward one. It is a question of fact for the jury in an FELA case. See *Wilson v. Chicago, Milwaukee, St. Paul, and Pac. R.R. Co.*, 841 F.2d 1347, 1353–54 (7th Cir. 1988). Rather than wrestle it to the ground to see if summary judgment was nonetheless correct on this ground, we prefer to move to BNSF's alternate argument: whether a trier of fact could find that it was negligent, even under the generous FELA standard, on this record.

## C

Because the district court did not reach the negligence argument, Guerrero understandably said nothing about it in his opening brief. But BNSF properly raised the issue before the district court, and it followed up in its responsive brief in this court. Guerrero then had an opportunity to address negligence in his reply brief. We may affirm on any ground supported by the record, see *Isby v. Brown*, 856 F.3d 508, 529 (7th Cir. 2017), and so this argument is properly before us.

Guerrero argues that there is ample evidence that would support a jury finding of negligence, and so we begin with his examples. He asserts that BNSF had a non-delegable duty to provide a reasonably safe place to work, and that this duty extended to "places remote from railroad premises." Reply Br. at 8. But the cases to which he refers for that proposition do not go so far as to impose on BNSF the duty to keep snowy state highways plowed and safe. Instead, they cover private places specifically known to, if not chosen by, the employer such as snow-covered employee motel parking lots (*Duffield v. Marra, Inc.*, 166 Ill. App. 3d 754 (1988)), snow-, ice-, and debris-covered premises of a customer (*Howes v. Baker*, 16 Ill. App. 3d 39 (1973)), and an off-site defective stairwell at a training facility (*Mills v. CSX Transp., Inc.*, 300 S.W. 3d 627 (Tenn. 2009). Guerrero also suggests that BNSF was negligent when, acting through Burwell, it asked Guerrero to show up at 7:00 a.m. the morning after a bad storm. Burwell, he contends, should have paid more attention to the weather forecast, or he should have had Guerrero show up at 10:00 p.m. the night before and given him a hotel room, or he should have cancelled the work request in the middle of the night when it turned out that the storm was as severe as it was.

We grant that Burwell could have gone the extra mile and taken one or more of those steps, but that fact does not demonstrate that BNSF was negligent when Burwell did not do so. As BNSF points out in its brief, Kewanee and Galesburg are in the upper Midwest, where snow is hardly an unusual phenomenon. (One estimate shows an average annual snowfall for Galesburg of 23 inches. See *Climate Galesburg – Illinois*, U.S. CLIMATE DATA, https://www.usclimatedata.com/climate/galesburg/illinois/united-states/usil0439 (last visited July 12, 2019).) Guerrero had lived in Kewanee for more than 35 years, and so it is impossible that he was a novice driving in snow. BNSF did not instruct him when to leave his house to start the drive to Galesburg. Even assuming, as we have, that he was "on the clock" from the time of Burwell's call, he had some discretion in deciding how to carry out his promise to show up at the railyard.

Note in this connection that we are *not* relying on the voluntary nature of Guerrero's initial decision to accept the assignment. From the time he said "yes" forward, we can assume that he was obliged to show up. But we cannot ignore the fact that the reason Burwell needed the extra help was the snowstorm, and nothing but the snowstorm. Nor can we ignore the fact that BNSF had no control over IDOT's efforts to plow the roads. In fact, Trooper Worsfold's testimony, estimating that the road was covered by about three inches of snow as she was driving to reach the accident site, might suggest that the roads had been plowed, even if new snow had already started accumulating.

A decision that BNSF was negligent merely by asking Guerrero to drive while it was still dark (as it would have been on January 31 to February 1 between 6:00 p.m. and 7:00 a.m.,

since sunset was about 5:15 p.m. and sunrise about 7:10 a.m.,
see *Sunrise & Sunset for Galesburg, IL*, OLD FARMER'S
ALMANAC,       https://www.almanac.com/astronomy/sun-rise-
and-set/IL/Galesburg/2015-02-01# (last visited July 12, 2019))
would have far-reaching implications. Taken to the extreme,
it would mean that employers in snowy (or rainy, or icy) re-
gions would be negligent whenever they required their em-
ployees to drive in bad weather. Even under the liberal negli-
gence standards that apply in FELA cases, *Consol. Rail Corp. v.
Gottshall*, 512 U.S. 532, 543 (1994), that is too much. As the Su-
preme Court itself recognized in *Gottshall*:

> "[t]hat FELA is to be liberally construed, however,
> does not mean that it is a workers' compensation stat-
> ute. We have insisted that FELA does not make the em-
> ployer the insurer of the safety of his employees while
> they are on duty. The basis of his liability is his negli-
> gence, not the fact that injuries occur.

*Id.* (quotations and citations omitted).

In the end, all that BNSF asked Guerrero to do was to come
in and help out with the task of clearing snow from the tracks.
Its failure, if one can call it that, to micro-manage exactly
when Guerrero left his house, which route he took from
Kewanee to Galesburg, and how he handled his car in the
snow, cannot be characterized as negligence. Even in the rail-
yard (that is, on the employer's premises and at the place of
employment), workers have some discretion in how they
carry out their jobs. So too here.

No one doubts that Mrs. Guerrero suffered a terrible per-
sonal loss when her husband lost his life as he tried to get to
work. And no one here is saying that Guerrero was at fault for

the accident. It may have been caused by a sudden gust of wind, or a patch of black ice that was invisible under the snow, or any of a number of other external factors. But by the same token, this record shows that the only action BNSF took was to ask Guerrero to come to work under conditions known to both of them. We cannot pin a finding of negligence on such a slender reed.

The judgment of the district court granting summary judgment in favor of BNSF is AFFIRMED.